# 14-4035-cr

# United States Court of Appeals

## for the

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

RYAN STAPLES,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK (SYRACUSE)

## BRIEF FOR DEFENDANT-APPELLANT

LAW OFFICE OF JOHN S. WALLENSTEIN
*Attorneys for Defendant-Appellant*
1100 Franklin Avenue, Suite 100
Garden City, New York 11530
(516) 742-5600

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………...iii

JURISDICTIONAL STATEMENT…………………………………………..1

QUESTIONS PRESENTED………………………………………………….2

STATEMENT OF THE CASE…………………………………………………3

      OVERVIEW……………………………………………………...3

      FACTS……………………………………………………....5

      PRE INDICTMENT PROCEEDINGS………………………………..6

      THE INDICTMENT…………………………………………6

      THE PLEA AGREEMENT…..……………………………......7

      THE PLEA…..…………………………………………....8

      THE SENTENCING SUBMISSIONS………………………………9

      THE SENTENCING HEARING………………………………..10

SUMMARY OF THE ARGUMENT………………………………………..11

ARGUMENT………………………………………………………...13

**POINT ONE**

DEFENSE COUNSEL'S PERFORMANCE WAS SO SUBSTANDARD AS
TO CONSTITUTE INEFFECTIVE ASSISTANCE……………………………...13

i

I.      APPLICABLE LAW…………………………………………..13

II.     COUNSEL'S INEFFECTIVE REPRESENTATION………………15

III.    THIS COURT CAN AND SHOULD DECIDE THIS ISSUE……...19

IV.     THE APPEAL WAIVER SHOULD NOT BE ENFORCED……….20

V.      GOVERNMENT BREACH OF THE PLEA AGREEMENT..……..21

VI.     STAPLES RECEIVED NO BENEFIT FROM THE PLEA
        AGREEMENT………………………………………………………23

**POINT TWO**

THE DEFENSE "ADVOCACY" AT SENTENCING WAS SO DEFICIENT
AS TO CONSTITUTE INEFFECTIVE ASSISTANCE …………………………26

I.      COUNSEL FAILED TO OBJECT TO GUIDELINES
        ENHANCEMENTS……………………………………………26

II.     DEFENSE FAILED TO SEEK EXPERT ASSISTANCE………...27

II.     THE DEFENSE SENTENCING SUBMISSION IS
        INADEQUATE………………………………………………...28

III.    COUNSEL FAILED TO ADVOCATE AT SENTENCING……….31

**POINT THREE**

THE SENTENCE WAS PROCEDURALLY UNREASONABLE………………32

**POINT FOUR**

THE SENTENCE WAS SUBSTANTIVELY UNREASONABLE……………...34

CONCLUSION…………………………………………………….......36

ii

# TABLE OF AUTHORITIES

## CASES

*Chhabara v. United States,* 720 F. 3rd 395 (2nd Circuit, 2013)………………..24, 25

*Davis v. Greiner,* 428 F. 3rd 81 (2nd Circuit, 2005)………………………………..15

*Parisi v. United States,* 529 F. 3rd 134 (2nd Circuit, 2008)……………………15, 20

*Purdy v. United States,* 208 F. 3rd 41 (2nd Circuit, 2000)…………………………14

*Strickland v. Washington,* 466 U.S. 668 (1984)………………………………..13

*United States v. Booker,* 543 U.S. 220 (2005)………………………………………29

*United States v. Brown,* 623 F. 3rd 104, 112 (2nd Circuit, 2010)…………………19

*United States v. Buissereth,* 638 f. 3RD 114 (2ND Circuit 2011)…………………...20

*United States v. Cavera,* 550 F. 3rd 180 (2nd Circuit, 2008)………………………35

*United States v. Corsey,* 723 F. 3rd 366, 377 (2nd Circuit, 2013)……………..32, 36

*United States v. Day,* 969 F. 2nd 39 (3rd Circuit, 1992)……………………………14

*United States v. Dorvee,* 616 F. 3rd 174 (2nd Circuit 2010)………………………..32

*United States v. Gordon,* 156 F. 3rd 376 (2nd Circuit, 1998)…………………..13, 14

*United States v. Leone,* 215 F. 3rd253 (2nd Circuit 2000)…………………………19

*United States v. Riggi,* 649 F. 3rd 143 (2nd Circuit 2011)……………………...20, 21

*United States v. Rodriguez,* 531 Fed. Appx. 148 (2nd Circuit, 2013)……………..19

*United States v. Torres,* 129 F. 3rd 710 (2nd Circuit, 1997)………………………..15

iii

## STATUTES

18 U.S.C. § 3231…………………………………………………………...1

18 U.S.C. § 2251 (a)………………………………………….........1, 3, 6

18 U.S.C. § 2251 (e)…………………………..……………………....1, 3

18 U.S.C. § 2252A (b)(2)… …………………………………………3, 4, 6

18 U.S.C. § 3553(a)……………………………………...…………*passim*

28 U.S.C § 1291………………………………………………………1

28 U.S.C § 2255……………………………………………………..19

## UNITED STATES SENTENCING GUIDELINES

3D1.2…………………………………………………………...26

4B1.5……………………………………………………….......27

5GI.2B………………………………………………………….33

## RULES

Rule 28 (a), F.R.A.P………………………………………………..1

Rule 32 (a)(7)(C), F.R.A.P…………………………………………..37

Rule 32 (a)(7)(B), F.R.A.P…………………………………………..37

## OTHER SOURCES

Sentencing Commission Statistics…………………………………...……35

iv

## **JURISDICTIONAL STATEMENT RULE 28 (a), F.R.A.P.**

This is an appeal from a final judgment [A-94] [1] of the United States District Court for the Northern District of New York, (Thomas J. McAvoy, Senior Judge) entered October 14, 2014, under Docket # 13 CR 440 (TJM), convicting Defendant-Appellant Ryan Staples, after a plea of guilty, of three counts of Production of Child Pornography in violation of 18 U.S.C. §2251 (a) & (e) and sentencing him principally to serve 360 months imprisonment on each count, to run consecutively, for a total term of imprisonment of 1,080 months, or 90 years; Supervised Release for life on each Count, to run concurrently; forfeiture of certain identified property; and to pay a $300 special assessment. Mr. Staples is currently serving his sentence at the United States Penitentiary in Tucson, Arizona. Jurisdiction in the District Court was pursuant to 18 U.S.C. § 3231.

A Notice of Appeal was timely filed on October 23, 2014, [A-100]. Jurisdiction in this Court is conferred pursuant to 28 U.S.C § 1291.

---

[1] Material in brackets refers to pages of the Appendix.

1

## <u>QUESTIONS PRESENTED</u>

This appeal presents the issue of ineffective assistance of counsel, in that the advocacy of defense counsel was so deficient as to violate the Sixth Amendment. As a result, the plea agreement, containing an appellate waiver, is unenforceable and the waiver void. The following questions are presented for this Court's determination:

1)     Was the assistance of counsel provided to Defendant-Appellant in the District Court so ineffective as to constitute a violation of the defendant's Sixth Amendment right to competent counsel?  Appellant submits that the answer is yes.

2)     Is the plea agreement and appeal waiver therein enforceable, considering the ineffective assistance of counsel in the District Court? Appellant submits that the answer is no.

3)     Was the sentence imposed excessive and far greater than necessary to achieve the goals of sentencing as mandated by 18 U.S.C. § 3553(a), and thus substantively unreasonable?  Appellant submits that the answer is yes.

4)     Was the sentencing procedurally unreasonable in that the District Court failed to properly calculate the advisory Guidelines range? Appellant submits that the answer is yes.

2

## STATEMENT OF THE CASE

## OVERVIEW

Defendant-Appellant Ryan Staples was convicted, after a plea of guilty, of three counts of Production of Child Pornography in violation of 18 U.S.C.§ 2251 (a) & (e). Mr. Staples was sentenced principally to serve a total of 1,080 months (90 years) imprisonment, the statutory maximum on each of the three counts running consecutively, to be followed by a lifetime term of supervised release with conditions, and to pay a $300 special assessment.

The charges against Mr. Staples stemmed from incidents which occurred in the summer and early fall of 2010, when he videotaped three boys, aged 9 to 13, (two of whom were related to him) engaged in sexual activity. The resulting recordings were then uploaded onto computers, one of which belonged to someone else. The recordings were found by federal agents during the execution of a search warrant at Mr. Staples' home in Franklin County, New York in October 2013. Forensic examinations of the computers established that Mr. Staples produced the images.

Mr. Staples was charged in a four count indictment [A-8] with the three counts noted above to which he ultimately pled guilty, along with a fourth count charging Possession of Child Pornography, in violation of 18 U.S.C.§

3

2252A(b)(2). With the advice of counsel, Mr. Staples entered into a plea agreement [A-13] with the Government, pursuant to which he agreed to plead guilty to the three Production counts, which carried a statutory sentencing range of 15 to 30 years each, in exchange for which plea the Government would dismiss the Possession count, which carried a statutory maximum sentence of 10 years. Thus, Mr. Staples was exposed to a potential 90 year sentence (which he ultimately received) instead of a potential maximum of 100 years, which, given the numbers, was of no benefit to him at all. The plea agreement contained a waiver of Staples' appellate rights if he was sentenced to 90 years or less, and yet his counsel apparently advised him to accept what would clearly be an unreviewable life sentence.

He pleaded guilty pursuant to the agreement before Judge McAvoy on May 1, 2014 and was sentenced on October 14, 2014 to three consecutive terms of 30 years each, the maximum possible sentence.

This appeal followed, after a *pro se* Notice of Appeal [A-100] was filed. Mr. Staples is presently serving his sentence at United States Penitentiary in Tucson, Arizona.

4

## FACTS

The operative facts underlying this case are fairly straightforward, albeit quite disturbing. From July through October of 2010, Ryan Staples, a resident of Franklin County in the Northern District of New York, videotaped three boys between the ages of 9 and 13[2] engaged in sexual activity, and uploaded the images thus produced onto his computers and a computer belonging to another person. Significantly, those images were all produced in a very short time span, between July and October of 2010, and the images depicted not only the three boys individually, but also together at times. However, as noted below, the Government chose to treat these obviously related occurrences as separate and distinct acts rather than a single course of conduct, and Staples' attorney did not challenge this treatment in any way, nor even raise the issue.

Staples also uploaded images to a file sharing website. Sometime in 2012, the website came under scrutiny by the Department of Homeland Security, and the ensuing investigation led agents to Mr. Staples. On October 24, 2013, agents executed a search warrant at Staples' home in Chateaugay, New York, where they seized two computers, various other electronic devices, and miscellaneous items.

---

[2] The record contains some details about the children, but they will not be further identified in this brief because of their ages, and their identities are irrelevant to the issues on appeal.

When computer experts searched the files of the computers, they found images containing child pornography, and Staples was arrested.

## PRE INDICTMENT PROCEEDINGS

After Staples' arrest, a Complaint was filed [A-2, Docket Entry # 1] and he appeared before United States Magistrate Judge Larry A. Kudrle in Plattsburgh, and was temporarily detained. Attorney Mark Anderson of Plattsburgh was appointed to represent Staples, [A-3, Docket Entry #3] and a detention hearing was scheduled. At the detention hearing on October 29, 2013, Staples was ordered permanently detained,[A-3, Docket Entry #4], and a preliminary hearing was scheduled . That hearing was adjourned at Anderson's request, until November 21, 2013.

## THE INDICTMENT

On November 20, 2013, the day before the scheduled hearing, a Northern District Grand Jury returned the four count Indictment in this case. [A-8] The Indictment charged Staples with three counts of Production of Child Pornography, 18 U.S.C. § 2251, one count for each of the three victims noted above, and a single count of Possession of Child Pornography, 18 U.S.C. § 2252A(b)(2). The next day, Staples was arraigned before Magistrate Judge Kudrle, entered a not guilty

6

plea, and a scheduling order was entered setting a trial date in January 2014. [A-4, Minute Entry and Docket Entry # 8]

## THE PLEA AGREEMENT

The trial date was moved back, and on May 1, 2014, Staples entered into a written plea agreement with the Government [A-13] and entered a plea of guilty pursuant to the agreement the same day. [A-34]. The terms of the Agreement provide that the defendant must plead guilty to all three counts of Production of Child Pornography,[A-13] each of which carried a mandatory minimum sentence of 15 years and a maximum sentence of 30 years[A-15]; pay restitution of "the full amount of the victims' losses" [A-14], and forfeit assets consisting of the computers seized by the agents when the search warrant was executed. [A-14]. The Government is obligated under the agreement to dismiss the remaining count of the indictment, with the proviso that such dismissal is without prejudice and the dismissed counts may be restored if the plea and sentence are vacated. [A-14]. The Government also agreed not to bring any other charges related to the conduct which underlies the Indictment and plea in this case. The agreement indicates the Court has discretion to run the sentences on the three counts consecutively. Notably, while the Agreement makes reference to the two level and additional one level downward adjustments to the Sentencing Guidelines calculation for acceptance of responsibility, there is no estimate of the potential Guidelines

Offense level or the calculations thereof. For reasons noted below, this is a significant omission and one which was misleading to the unsophisticated, first time offender who is the defendant in this case.

## **THE PLEA**

On May 1, 2014, Mr. Staples appeared before Judge McAvoy and entered a guilty plea pursuant to the agreement [A-34]. Judge McAvoy advised and questioned Mr. Staples with respect to the rights he was waiving by entering his guilty plea, and the defendant acknowledged that he understood the rights he was giving up. The clerk read the counts of the Indictment aloud, and Mr. Staples said that he was guilty after the reading of each count. The Assistant United States Attorney was asked to outline the Government's proof, and she did so. Defense counsel was asked to outline for the Court his experience and the time he spent on this case. Mr. Staples was <u>not</u> asked to independently allocute regarding his actions which constituted the crimes to which he pled guilty, although he was asked to acknowledge his guilt and admit the allegations outlined by the Government. Judge McAvoy explained the sentencing options and the fact that he was not bound by the provisions of the plea agreement. Judge McAvoy then accepted the defendant's plea and set a date for sentencing.

## THE SENTENCING SUBMISSIONS

Between the plea allocution and the date of sentencing, the Probation Department prepared a PreSentence Report, and both the Government and the defense submitted memoranda. Although given the opportunity to object to the draft PreSentence Report, defense counsel failed to submit any substantive objections or offer alternative offense level calculations, except an objection that Mr. Staples had not engaged in specific sexual activity, which was contrary to what Staples had admitted during the plea allocution.  The Government's sentencing memo [A-59], in addition to seeking the maximum sentence of 90 years, argued that the Court should deny the defendant credit for acceptance of responsibility, because Mr. Staples denied that same issue during his presentence interview, and his attorney compounded the problem by emphasizing the denial in the defense memo. The defense memorandum [A-68] was relatively short, and a considerable portion of it discussed the advisory nature of the guidelines, which was obviously familiar to Judge McAvoy, a very experienced jurist.  In the memorandum, defense counsel inexplicably told the Court that there was no excuse for the defendant's conduct [A-71]. The sole effort to seek a sentence below the recommendation of the Government and the Probation Department was a single cursory paragraph [A-71] asking the court to sentence the defendant below the recommended 90 years. He did not argue for concurrent sentences on the three counts of conviction, nor

9

did he make an argument that the three allegedly separate offenses were really part of a single course of conduct, which would have bolstered an (unmade) argument for concurrent sentences. No argument was made that the calculated Guideline range was excessive or incorrect, and a sentence below the Guidelines would be appropriate. He did not argue the parsimony clause of § 3553(a) to seek a lesser sentence.

**THE SENTENCING HEARING**

On October 14, 2014, sentencing proceeded before Judge McAvoy. Despite an invitation from Judge McAvoy to make an oral presentation on behalf of his client, Anderson chose not to speak.

After the Government addressed the Court and asked for a guideline sentence (life), Staples addressed the Court. Explaining that he was extremely remorseful for his actions and has since found religion, he asked for mercy and a chance to once again be a productive citizen when released [A-79-85]

Judge McAvoy noted the guideline offense level (43) that he found, without explanation or elaboration. He then sentenced Mr. Staples to serve three consecutive terms of 30 years each, the statutory maximum, to be followed by a lifetime of supervised release (as if the defendant might actually be alive at the age

10

of 127), registration as a sex offender, and a $300 special assessment. Mr. Staples is serving his sentence at the United States Penitentiary in Tucson, Arizona.

## SUMMARY OF ARGUMENT

Ryan Staples argues that his plea and sentence must be vacated, because he did not receive effective assistance of counsel as mandated by the Sixth Amendment. Specifically, he argues that the waiver of his right to appeal any sentence of 90 years or less was not the product of a knowing, intelligent and voluntary waiver of his rights, because his counsel's advice and actions were so deficient that he was deprived of due process of law.

Staples argues that had he received proper and competent advice, he would either have gone to trial and put the Government to its proof, or entered a guilty plea to all charges without a waiver of appellate rights, thus preserving his ability to argue for a sentence of less than the maximum of 90 years, and preserving his ability to appeal the sentence.

Staples argues further that he received no benefit whatever from the plea agreement, as the appellate waiver prevents him from challenging a sentence of 90 years or less, when he faced a maximum of 100 years had he gone to trial or pleaded without a waiver, which is a distinction without a difference given the

11

numbers involved. He also submits that the plea agreement and the waiver contained therein are of no force and effect because the Government breached the agreement in arguing for the denial of downward adjustments to the Sentencing Guidelines for acceptance of responsibility.

Staples argues that his counsel's performance in connection with the plea agreement and sentencing, including failing to object to the Guidelines calculation, submitting a deficient and, indeed, counterproductive memorandum, and failing to argue at all during the sentencing hearing, deprived him of the effective assistance of counsel to which he is entitled.

Finally, Staples argues that the sentence of 1,080 months, 90 years, the statutory maximum on each of the counts of conviction run consecutively, was both procedurally and substantively unreasonable and must be vacated.

## ARGUMENT

## POINT ONE

## DEFENSE COUNSEL'S PERFORMANCE WAS SO SUBSTANDARD AS TO CONSTITUTE INEFFECTIVE ASSISTANCE

## I. APPLICABLE LAW

The Sixth Amendment to the United States Constitution guarantees criminal defendants the assistance of counsel for their defense. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set out the definitive two prong test for determining whether counsel's performance is ineffective. Counsel's performance must be objectively unreasonable based upon prevailing professional norms, and there must be "…a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra, at 694.* In the case at bar, for the reasons set forth below, it is clear that both of *Strickland's* requirements have been met, and therefore Mr. Staples' plea agreement and appellate waiver are unenforceable.

In *United States v. Gordon,* 156 F. 3rd 376 (2nd Circuit, 1998) this Court made clear that counsel has an affirmative obligation to inform his client about considerations relevant to acceptance of a plea agreement. In *Gordon,* the Court ruled that counsel's performance fell below an objective standard of reasonableness

13

because of counsel's underestimation of the defendant's exposure to a higher sentence if he went to trial rather than accept a plea. The Court found this to be key because "knowledge of the comparative sentencing exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Gordon, supra,* quoting *United States v. Day,* 969 F. 2nd 39 (3rd Circuit, 1992). Such is the case at bar. Staples faced a maximum of 100 years in prison if convicted at trial, yet the plea agreement his counsel advised him to accept required him to waive his right to appeal any sentence up to 90 years. That ten year difference, given the magnitude of the numbers, was no difference at all, and thus Staples derived no benefit from the plea agreement. Counsel's advice to accept the plea agreement, and the waiver it contained, was thus objectively unreasonable; why would Staples not wish to preserve his appellate rights for a 90 year sentence, especially when the alternative, not accepting the offer, could only add ten years to what was already a sentence beyond his life expectancy?

A defendant's knowledge of his rights, and lack of experience in the criminal justice system, are relevant matters in determining whether his counsel's performance was substandard, *Purdy v. United States,* 208 F. 3rd 41 (2nd Circuit, 2000) Staples had no criminal record, and had never before been the subject of a Federal criminal proceeding. He never finished high school, although he apparently obtained a diploma through a correspondence school. Charged with a

14

very serious crime, he relied upon his lawyer to provide the advice he needed to make an informed decision, but he didn't get it.

This Court has sustained claims of ineffective assistance of counsel where an attorney failed to inform her client about relevant considerations in the acceptance of a plea, *Davis v. Greiner,* 428 F. 3rd 81 (2nd Circuit, 2005). An ineffective assistance claim survives a guilty plea and appellate waiver where the claim concerns not merely the actions of counsel, but the advice given in shaping the decision to plead and/or waive, *Parisi v. United States,* 529 F. 3rd 134 ( 2nd Circuit, 2008). An ineffective assistance claim will be upheld where the advice of counsel is not within acceptable standards, *United States v. Torres,* 129 F. 3rd 710 (2nd Circuit, 1997). Clearly, as demonstrated below, not only did counsel fail to give acceptable advice, he totally abdicated his duty of loyalty and zealous advocacy.

## II. COUNSEL'S INEFFECTIVE REPRESENTATION

A key measure of the effectiveness of counsel's performance must be the time and effort put into the defense. Here, Anderson spent minimal time, as he noted in the following colloquy with the Court at the plea [A-55]:

"THE COURT:     And approximately how much time have you spent so far defending this case?

15

THE DEFENDANT [sic]:          With direct consultation with my client, approximately five hours and preliminary calculations, approximately 12 hours.

THE COURT:     How about research? Did you do some research?

MR. ANDERSON:        Yes.   Probably three to four hours of research time."

It is not possible to discern what Anderson meant when he said "preliminary calculations", but it is reasonable to assume that "calculations" is a reference to the Sentencing Guidelines; there is nothing else in the case that would require calculating. It is significant that Anderson fails to mention meetings with prosecutors, or court appearances, or traveling to the jails where Mr. Staples was housed.

From Anderson's words, and assuming *arguendo* that the 12 hours does not include the five hours he attributes to discussions with Mr. Staples, he spent a total of 21 hours before entry of the plea. It is significant that Anderson is from Plattsburgh, a drive of about two and a half hours each way to Albany, and Mr. Staples was housed in the Rensselaer County Jail, just across the river from the Northern District Courthouse in Albany .

To provide proper assistance in a case of this nature, defense counsel would need to spend many hours in discussions with the client, as well as performing all

16

the other appropriate tasks. The applicable statutes and case law should be researched, something which should take far more than 3 to 4 hours.

The Sentencing Guidelines would need to be parsed and dissected before agreeing to a plea, so that counsel had at least some idea of what his client faced. The Guidelines in child pornography cases are complex and detailed, and learning the facts of the case and applying them to the Guidelines to determine if enhancements are appropriate or can be challenged is a time consuming effort, one which needs to be undertaken prior to a plea. Even though the plea agreement in this case contains no Guideline estimate, counsel should have undertaken his own analysis. As discussed below, the Guideline range which the Probation Department ultimately determined, adopted *in toto* by the Government and the Court, and to which defense counsel did not object, should have been challenged.

Plea negotiations with the United States Attorney's office can occupy considerable time as well, unless of course one simply accepts the offered plea agreement without dissent. A proper negotiation in this case would have sought to reduce the appeal waiver to something far below the statutory maximum sentence; failure to obtain the Government's consent would then require a lengthy discussion of options with the defendant. How can one decide whether to plead or go to trial without talking to the client about the evidence, the Rule 16 discovery, and the strength of the Government's case? None of that appears to have been done,

17

certainly not in the paltry five hours Anderson admits spending with Staples. How can any attorney let a client agree to be locked up forever with such little effort?

As detailed below, the effort (or rather, lack thereof) Anderson put into the sentencing submission is telling. If his pre-plea efforts were of the same caliber, there is simply no way that Staples could have received appropriate and effective advice, and his plea and waiver were not the product of a knowing, voluntary and competent decision.

Beyond the woefully inadequate and substandard performance of defense counsel, there is the issue of whether the result would have been different if Staples had received effective assistance. While no one can know that for certain, there were options and avenues that should have been explored, and which may well have led to a more favorable result.

First, Staples could have chosen to go to trial. Given the strength of the Government's evidence, that may not have been a truly viable option, but the worst result would have been a conviction on all counts and a maximum consecutive sentence, 100 years, only ten years more than the sentence he received. That is not such a great difference when dealing with numbers that high, so forcing a trial was a possibility. At the very least, taking that position may have resulted in a better plea agreement.

Second, Staples could have opted to plead to all counts without signing an agreement or waiving any rights to appeal or challenge the sentence. Again, the worst result could have been only ten years more than he is presently serving, hardly a difference. This option was not presented to Mr. Staples, nor apparently even considered by Anderson.

In sum, the representation provided to Mr. Staples by Mr. Anderson was so lacking in effort, and so far below any reasonable standard of professionalism, that Mr. Staples was deprived of the effective assistance of counsel guaranteed to him by the Sixth Amendment. His plea and sentence should be vacated.

## III. THIS COURT CAN AND SHOULD DECIDE THIS ISSUE

When a claim of ineffective assistance of counsel is brought on direct appeal, the Court of Appeals has three options: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent 28 U.S.C. § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before [the Court]" *United States v. Brown,* 623 F. 3rd 104, 112 (2nd Circuit, 2010); *United States v. Rodriguez,* 531 Fed. Appx. 148 (2nd Circuit, 2013); *United States v. Leone,* 215 F. 3rd 253 (2nd Circuit 2000). It is respectfully submitted that because counsel's performance in the District Court was so woefully deficient, this Court should adjudicate the issue. However, if this

19

Court determines that the record is insufficiently developed to decide the claim at this juncture, the matter should be remanded for additional fact finding. Dismissal to permit a 2255 petition would be a waste of time, effort, and judicial resources, as it is clear from the existing record that counsel's representation in the District Court was far below prevailing professional standards, and that as a result Staples is serving a sentence of 90 years. Staples argues that the claim is sufficiently developed, by virtue of counsel's failure to challenge the Sentencing Guidelines or make any argument at sentencing, and by counsel's deficient and counterproductive sentencing memorandum, which contained arguments contrary to defendant's interests. Alternatively, Staples argues that the case should be remanded to the District Court for a fact-finding hearing on the issue.

## IV. THE APPEAL WAIVER SHOULD NOT BE ENFORCED

"Waivers of the right to appeal a sentence are presumptively enforceable" *United States v. Riggi,* 649 F. 3rd 143 (2nd Circuit 2011), and the Court of Appeals has consistently upheld such waivers. However, where the waiver is not made knowingly, voluntarily and competently, the waiver will be deemed unenforceable, *Riggi, supra; United States v. Buissereth,* 638 F. 3rd 114 (2nd Circuit 2011). A waiver is not a knowing and voluntary one when the advice given by counsel was below acceptable standards, *Parisi v. United States, supra,* as is certainly the case here. Additionally, the plea agreement and appeal waiver cannot be enforced

20

because of the Government's breach of the plea agreement, as discussed below, and because Staples received no benefit from the waiver, thus abrogating the agreement on contract principles *see, United States v. Riggi, supra.*

## V. GOVERNMENT BREACH OF THE PLEA AGREEMENT

In the plea agreement, the Government agrees that they will advocate for a two level adjustment for acceptance of responsibility, if the defendant accepts responsibility for his actions, and an additional one level adjustment if the acceptance is in a timely fashion and spares the government the necessity of preparing for trial. These adjustments are standard in plea agreements and routinely applied when the defendant enters into a plea agreement with the Government, and enters a timely plea pursuant thereto, as was done in this case.

The factual allocution at the time of the plea included an admission by the defendant that he engaged in anal sex with a victim, something which he later denied in both the PSR and the defense sentence memo. However, the defendant was never asked by the District Judge to describe his conduct in his own words; he merely answered "yes" when asked if he did the things which were read aloud in court by the deputy clerk, and later gave the same answers when the Assistant United States Attorney recited the factual allegations contained in the plea agreement. Both of those "on the record" recitations were complex, and contained technical statutory language.

21

If we examine that plea allocution from the defendant's standpoint, it is not difficult to imagine the torment. He is a layman, charged with a horrific crime, facing a Federal judge in the well of the courtroom, surrounded by United States Marshals, federal prosecutors, and his lawyer, appointed by that same court. To say this place he is in is unfamiliar territory is a vast understatement, and knowing that he is about to admit his own guilt and be at the mercy of people and events beyond his control is about as stress producing a situation as one can imagine. An official reads language with which he is unfamiliar, but he knows he is pleading guilty and knows that he is supposed to say "yes" when asked if that is what he did. It is unrealistic to believe that at that point the defendant is cogent enough to stop the proceedings and say "wait, I did the one thing, but I didn't do that". That is especially important because he does admit that he produced and distributed child pornography. That is the crime with which he was charged.

In its sentencing memo, the Government urged the Court to deny defendant the benefit of the downward adjustments for acceptance of responsibility, based upon this denial of a single act. This *de minimis* and immaterial denial does not in any way vitiate the defendant's acceptance of responsibility for the crimes for which he was indicted and entered his plea, and the Government's position is therefore a breach of the plea agreement, rendering it ineffective and therefore voiding the appellate waiver. In this regard, it is important to remember that the

22

defendant was not charged with any crimes other than the production, distribution, and possession of child pornography, crimes he admitted during his plea allocution. He freely admitted that he produced video images of underage boys engaged in sexual activity, which is at the heart of the crime. The specific acts, whether they refer to anal sex, oral sex, or other sexual activity, are not elements of the crime of production of child pornography, so Mr. Staples' denial of one specific act is not a denial of responsibility for his actions. Thus, the Government's position, advocating the denial of a reduction in Guideline Offense level for acceptance of responsibility, is a breach of the agreement, and renders the agreement void, taking the appellate waiver down along with it.

Adding insult to injury, defense counsel again demonstrated his ineffectiveness, by failing to raise the issue of the Government's breach in the District Court.

## VI. STAPLES RECEIVED NO BENEFIT FROM THE PLEA AGREEMENT

The Government's advocacy for this denial, coupled with the complete lack of a Guidelines estimate in the plea agreement, clearly demonstrates that Mr. Staples did not receive any benefit from entering into the plea agreement. This Court has often held that a defendant who receives the benefit of his bargain *vis-à-vis* a waiver of appellate rights will not be heard to complain. For instance, in

*Chhabara v. United States,* 720 F. 3rd 395 (2nd Circuit, 2013) this Court identified the factors to be considered by a District Court in determining whether a defendant would have decided not to plead guilty and insisted on going to trial. Those factors include, *inter alia,* "whether pleading guilty gained him a benefit in the form of more lenient sentencing" and "whether the Government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty." Here, by pleading guilty pursuant to the agreement drafted by the Government, Staples faced a maximum sentence of 90 years in prison. Had he gone to trial, or pleaded as charged without an agreement (an option apparently not explained to him by Anderson) he faced a maximum of 100 years, as the count of Possession of Child Pornography which the Government agreed to dismiss in exchange for the plea carries a maximum of ten years. As a practical matter, there is no difference whatever between 90 and 100 years to a 37 year old man; either is a sentence which extends far beyond any normal life span. Therefore, the combination of those two identified factors, i.e. the lack of a benefit and the immateriality of the additional count if the Government proceeded to prosecute, make it beyond cavil that Staples received no benefit whatever from the plea agreement. Thus, the appellate waiver contained therein is not a knowing and voluntary waiver, and must be voided.

24

While *Chhabara, supra,* was concerned with whether a defendant would have gone to trial, in this case Mr. Staples might well have either gone to trial and put the Government to its proof, or entered a guilty plea to all the charges in the indictment and thus avoided waiving any appellate rights as they applied to his sentence, which is the most significant matter. There is no logical reason why the factors identified in *Chhabara,* cannot be equally applied to an appellate waiver contained within a plea agreement.

In the case at bar, Mr. Staples gained no discernible benefit from his appellate waiver. He faced a four count indictment, three counts of which (the production counts) carried potential sentences of between fifteen and thirty years, and the fourth of which carried a potential sentence of up to ten years. Mr. Staples therefore faced a maximum sentence, assuming all sentences ran consecutively, of 100 years. Whether he pleaded guilty to the entire indictment or was convicted after trial, the maximums remained the same. Accepting a plea agreement under which he waived his right to appeal a sentence of 90 years or less was of no benefit whatever to him. There is no qualitative, or true quantitative, difference between 90 and 100 years to a 37 year old man who will, in either case, spend the rest of his life in prison.

25

# POINT TWO

## THE DEFENSE "ADVOCACY" AT SENTENCING WAS SO DEFICIENT THAT STAPLES' SIXTH AMENDMENT RIGHTS WERE VIOLATED

### I. COUNSEL FAILED TO OBJECT TO GUIDELINES ENHANCEMENTS

The twenty-one page, small print plea agreement did not contain an estimate of the Guidelines range, but the PreSentence Report did. That estimate included so many upward enhancements that the initial range was level 50, well above level 43, the top of the Guidelines chart. By operation of law, therefore, the effective Guideline range was Level 43, and the District Court so found. [A-86]. Defense counsel filed a letter objecting to just a few minor points in the PSR, and made no attempt at all to object to the enhancements or argue for their removal.

The most significant failure in regard to the PreSentence Report is related to the offense level calculation. In paragraph 43 of the PreSentence Report, the Probation Officer blithely announces that "[A]s the counts do not involve substantially the same harm and involve separate victims, they do not meet the grouping criteria under U.S.S.G. § 3D1.2 and will be analyzed separately." However, a careful reading of the Guidelines and the Application Notes leads to the conclusion that a reasoned argument can be made that the defendant's conduct was part of a single course of conduct involving common victims. That would

26

require the grouping of the counts of conviction, substantially reducing the offense level because the three level grouping enhancement would not apply. This argument was not made; in fact, there is nothing to indicate that defense counsel even recognized the existence of the argument.

In paragraph 73 of the PreSentence Report, the Probation Officer applies a 5 level enhancement under U.S.S.G. § 4B1.5, asserting that the offense of conviction is a 'covered sex crime." Defense counsel never challenged this enhancement, although a careful parsing of the Guideline and the Application Notes shows that trafficking in child pornography does not constitute a covered sex crime for the purpose of this enhancement. Whether that argument would have been successful is unknown; what is known is that defense counsel never considered it or raised it, thus once again demonstrating his total abdication of responsibility and his ineffectiveness.

## II. DEFENSE COUNSEL FAILED TO SEEK EXPERT ASSISTANCE

Despite the nature of the crime, and the specific acts alleged against Mr. Staples, defense counsel never sought the appointment of an expert, or the allocation of CJA funds for expert assistance. An expert on child pornography would have been of valuable assistance to the defense in determining whether or not to plead guilty or go to trial, but Anderson never asked the Court to approve

such an expert. Once the decision to plead guilty was made, the defendant should have been examined by a psychologist or psychiatrist, whose insight and evaluation were necessary for arguments to be made in mitigation at sentencing. Inexplicably, Anderson never sought such an expert; the record is totally devoid of any application for such, and nothing is contained in the defense sentencing submission. This failure to make any attempt to obtain the expert assistance needed, which may well have provided substantial mitigating evidence and resulted in a much lower sentence, was simply inexcusable. Anderson knew that Staples had been abused as a child; he was present at the PSR interview, and had the report when he prepared his memorandum. The PSR discusses Mr. Staples' childhood and the abuse he himself suffered, and merely making reference to that in a sentence memo, without seeking the advice of an expert who might elaborate on it and provide an opinion in mitigation, is clearly below the standards and norms expected of defense counsel in a serious Federal criminal case where the stakes are so high.

## III. THE DEFENSE SENTENCING SUBMISSION IS INADEQUATE

The defense submission itself  [A-68] is clear and convincing evidence of the fact that Staples received ineffective assistance of counsel of Constitutional dimension. The first four pages or so of a seven page memorandum are consumed

by the explanation that the Guidelines are advisory after *United States v. Booker,* 543 U.S. 220 (2005), and a simple recitation of the factors laid out in 18 U.S.C. § 3553(a), with no details of how these factors would apply to Mr. Staples. Anderson makes passing reference to 18 U.S.C. § 3553(a), in the section of his memorandum where he describes the advisory nature of the guidelines and quotes the factors the court must consider. There is no elaboration, however, and no argument that the 90 year sentence the Government sought was far greater than necessary to achieve the aims of sentencing.

While counsel clearly knew that the Government was seeking a 90 year sentence[3], the maximum possible, and the probation department had made a similar recommendation, he spent only a single sentence asking the Court to "deviate downward" from that outrageous number. [A-71]. No argument is made for the sentences on each count to run concurrently rather than consecutively, in spite of the Government's recommendation. Anderson could have, and should have, argued that the acts of the defendant, committed as they were over a short period of time, involving victims who were all known to each other and who were interacting with each other, were part of a single course of conduct, not separate and distinct acts. Such an argument might well have provided a persuasive basis for the District Court to apply a lower Guideline level, and run the sentences concurrently instead

_____

[3] The Government's sentencing memorandum was filed before the defense memo.

29

of consecutively, but the argument was not made, either in the written submission or orally at the time of sentence. Even assuming that Judge McAvoy intended to impose consecutive sentences regardless of such an argument, Anderson failed to advocate for minimum sentences rather than consecutive maximums.

There is a vast gulf between concurrent minimum sentences (15 years) and consecutive maximum sentences (90 years), and Judge McAvoy had many choices. Without vigorous defense advocacy, or any advocacy at all, the Government's demand for the absolute maximum prevailed. This complete failure of Anderson to make any reasoned argument for a sentence other than 90 years surely did nothing to assist the defendant, and the prejudice, a lifetime of imprisonment, is obvious.

It gets worse, though. Not only did Anderson make no arguments to persuade the Judge to give concurrent sentences or a lesser sentence, he virtually threw the defendant under the proverbial bus. Portions of the defense sentencing memo read as if they came from the Government's word processor. For example, Anderson says "[T]here is no excuse for Mr. Staples' actions, and he offers none."[Defense memorandum p. 4, A-71] Later he says "regardless of why Mr. Staples chose to sexually molest his three victims, it does not alleviate the physical, emotional and psychological [sic] he caused them." [Defense memorandum p. 5, A-72]. As if those damning words weren't enough, in the very next paragraph Anderson writes "[F]urthermore, Mr. Staples knows that his possession of internet-

obtained child pornography certainly contributed to a world-wide industry of production and the victimization of children past and present. He knows that he, as both a purveyor and solicitor of child pornography, fed the demand for such images."  If one did not know that these are quotes from the defense attorney's memo, one would assume they were a part of the prosecution effort to obtain a maximum sentence.

## IV.  COUNSEL FAILED TO ADVOCATE AT SENTENCING

On October 14, 2014, sentencing proceeded before Judge McAvoy. When invited (indeed, expected) to address the Court on Mr. Staples' behalf, which was a perfect opportunity to argue for concurrent sentences of far less than the maximum sentence, Anderson said nothing!

"THE COURT: Mr. Anderson, what would you like to say on behalf of Mr. Staples before I sentence him?

MR. ANDERSON:     Your Honor, I would rely upon my previous submissions in the sentencing memorandum…."[A-77]

This silence, given the woefully deficient sentencing memorandum, was a complete abdication of Anderson's responsibility to Staples, and amounts to *per se* ineffective assistance. No defense attorney worthy of the name would stand virtually mute when a client faces a lifetime of incarceration.

The damage caused to Mr. Staples by Anderson's memorandum and failure to advocate his client's cause at sentencing is clear. In his remarks at sentencing,

31

Judge McAvoy emphasized the trauma caused to the victims by Mr. Staples' conduct: "…you demonized your victims…" [A-85]; "I have had a lot of experience with people who have been victimized by conduct, *maybe not as heinous as yours*…and it really ruins those…young men."[A-85/86] (emphasis added). Judge McAvoy then proceeded to sentence Staples to 90 years in prison.

## POINT THREE

## THE SENTENCE WAS PROCEDURALLY  UNREASONABLE

Appellate courts begin analysis with a review of sentences' procedural reasonableness.  A district court will normally begin all sentencing proceedings by correctly calculating the applicable U.S. Sentencing Guidelines range, and will then consider the factors listed in 18 U.S.C.S. § 3553(a) before imposing a final sentence. *United States v. Dorvee,* 616 F. 3rd 174 (2nd Circuit, 2010); *United States v. Corsey*, 723 F.3d 366, 368 (2nd Circuit 2013)  In the case at bar, the District Court did not articulate a calculation of the Guidelines, as required. The Court did note that it had reviewed the presentence report [A-76], but the record is devoid of a guideline calculation. Only after the Government had made an argument, defense counsel had declined to speak, and the defendant himself had spoken did the Court mention the Guidelines, and then only in passing:

"[I] have examined the guideline manual in connection with this matter and the Court finds your total offense level is a 43, your criminal history category is a one, and your guideline imprisonment range is life. However, the statutorily-authorized maximum sentences are less than the maximum of the applicable guidelines range; therefore, the guideline range is 1,080 months, pursuant to Section 5G1.2B of the sentencing guidelines." [A-86-87]

The Court did not explain how it had arrived at the guideline offense level. The presentence report did calculate the guidelines, which the Government and defense counsel accepted without challenge[4], but the Court did not perform an independent analysis, thereby abdicating its responsibility and rendering the sentencing procedurally unreasonable.

Similarly, the District Court failed to analyze the application of the 3553(a) factors to the defendant, other than in the most cursory fashion. While the judge said that he "considered all of the factors" [A-86], he did not articulate them, nor did he say how they applied or what factual findings he made to support his conclusions.

Only after he imposed sentence did the District Judge find that the sentence imposed was "sufficient, but not greater than necessary" to reflect the objectives of

---

[4] Defense counsel's ineffectiveness for failing to challenge the calculation is noted elsewhere in this brief.

33

sentencing as set forth in the statute, [A-87]. He did not explain his reasoning in detail , but simply noted the words of the statute. His reasoning should have been spread upon the record prior to the imposition of sentence, so that the parties would have an opportunity to be heard with regard thereto if they so desired.

The failure of the District Court to properly calculate the Sentencing Guidelines range, analyze the 3553(a) factors, and apply the law to the factual findings constitutes plain error, and requires vacatur of the sentence.

## POINT FOUR

## THE SENTENCE WAS SUBSTANTIVELY UNREASONABLE

At what point do we say "enough is enough?" Congress has mandated that sentences must be "sufficient, but not greater than necessary" to achieve the aims of sentencing, *18 U.S.C. 3553(a).* Would 30 years be sufficient? 40? If Mr. Staples were sentenced to 45 years, the minimum sentences consecutively, he would be 82 years old when released. The sentence he received, the maximum possible, is a life sentence, and if Congress intended that to happen they would have said so; they have not been shy about authorizing life in prison for any number of crimes.

The sentence of 1,080 months, 90 years, meted out to Mr. Staples is far more than the norm, and outside the heartland of sentences imposed even for child

34

pornography, with the draconian mandatory sentences required under the Adam Walsh Act. According to the Bureau of Prisons website, his projected release date is March 20, 2092!! The United States Sentencing Commission has gathered the statistics on sentences in Fiscal Year 2014, and charted them by Circuit and District, broken down into categories of crimes, and available online for all to examine[5]. The tables published by the Commission show that the median sentence for child pornography convictions nationally was 97 months; in the Second Circuit in 2014 it was 84 months; in the Northern District of New York the median was 180 months[6]. Mr. Staples sentence was 600% higher than the NDNY median, which itself was more than twice the Second Circuit median, and nearly double the national statistics.

This Court will set aside a sentence when the decision of the District Court cannot be located within the range of permissible decisions, *United States v. Cavera,* 550 F. 3rd 180 (2nd Circuit, 2008). While it is rare that sentences will be set aside for substantive unreasonableness, nonetheless this Court must from time to time exercise that judgment. "If substantive review of sentences actually exists

---

[5] *http://www.ussc.gov/research-and-publications/federal-sentencing-statistics/federal-sentencing-statistics-district-circuit-state/federal-sentencing-statistics-2014*

[6] *Id.,* Tables 5 and 7

35

other than in theory, it must be undertaken at least occasionally." *United States v. Corsey, supra*, at 377 (2nd Circuit, 2013) (Underhill, D.J., concurring). The sentence in this case, given the woefully deficient advocacy by Mr. Staples' defense attorney, must be reviewed and set aside.


## CONCLUSION

For all of the reasons set forth herein, Defendant-Appellant Ryan Staples' plea and sentence must be vacated, and the matter remanded to the District Court.

DATED: June 10, 2015

Respectfully submitted,

/s/ JOHN S. WALLENSTEIN

**JOHN S. WALLENSTEIN, ESQ.**

**Attorney for Defendant-Appellant**

RYAN STAPLES

1100 Franklin Avenue, Suite 100

Garden City, New York 11530

(516) 742-5600

JSWallensteinEsq@outlook.com

# **CERTIFICATION**

Pursuant to Rule 32 (a) (7) (C) of the Federal Rules of Appellate Procedure, JOHN S. WALLENSTEIN, ESQ., counsel of record for Defendant-Appellant RYAN STAPLES, hereby certifies that the foregoing brief for Defendant-Appellant is in compliance with the type-volume limitations set forth in F.R.A.P. 32 (a) (7) (B), in that it contains 8,257 words as measured by the word processing program utilized to prepare the brief.

DATED:    GARDEN CITY, NEW YORK

          June 10, 2015

*/s/ JOHN S. WALLENSTEIN*

_____

JOHN S. WALLENSTEIN, ESQ.