# 14-4035

*To be Argued by:* STEVEN D. CLYMER

## United States Court of Appeals
### FOR THE SECOND CIRCUIT
### Docket No. 14-4035

UNITED STATES OF AMERICA,
*Appellee,*

v.

RYAN STAPLES,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

Richard S. Hartunian
*United States Attorney for the*
 *Northern District of New York*
100 South Clinton Street
Syracuse, NY 13261-7198
Tele: 315-448-0672
Email: Steven.D.Clymer@usdoj.gov

KATHERINE KOPITA
STEVEN D. CLYMER
*Assistant United States Attorneys*
 *of Counsel*

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES PRESENTED ....... 1

STATEMENT OF THE CASE ................................. 2

    A.  Introduction ................................................ 2

    B.  Procedural History ...................................... 3

STATEMENT OF FACTS ...................................... 5

SUMMARY OF ARGUMENT ................................ 8

ARGUMENT ........................................................... 9

POINT I:

    Staples' Appeal Should Be Dismissed
    Because He Knowingly and Voluntarily
    Waived His Right to Appeal His
    Conviction and Sentence and Has Not
    Demonstrated a Basis for Avoiding the
    Waiver…… ................................................... 9

    A.  Background .................................................. 9

    B.  Governing Law ......................................... 12

        1. Enforceability    of    Appeal
           Waivers ............................................... 12

        2. The Right to Effective Assistance
           of Counsel ........................................... 13

ii

3. The Effect on an Appeal Waiver of a Claim of Ineffective Assistance of Counsel ........................ 15

4. The Effect on an Appeal Waiver of a Claim of a Government Breach of a Plea Agreement .............. 16

C. Standard of Review ................................. 17

1. Ineffective Assistance of Counsel ...... 17

2. Government Breach of Plea Agreement ........................................... 19

D. Discussion ............................................... 20

1. Staples Knowingly and Voluntarily Waived His Right to Appeal. ................................................. 20

2. Staples' Attorney Did Not Provide Ineffective Assistance of Counsel in Connection with the Plea Agreement. ................................. 21

3. The Government Did Not Breach the Plea Agreement. ........................... 27

   a. The Acceptance of Responsibility Provisions in the Plea Agreement ..................... 28

iii

b. The Factual Basis in the Plea Agreement and at the Change of Plea Hearing ............................ 29

c. Staples' False Denial of a Material Fact ................................ 30

d. Discussion .................................... 32

4. Staples Derived Benefit From the Plea Agreement. .................................. 35

5. Conclusion .......................................... 36

Point II:
Staples Did Not Receive Ineffective Assistance of Counsel in Connection With the Plea Agreement or Guilty Plea, or at Sentencing. ....................................... 36

A. Governing Law ......................................... 37

B. Standard of Review .................................. 38

C. Discussion ................................................ 39

1. Counsel's Decision Not to Raise Baseless Objections to Recommended Guidelines Enhancements Was Not Ineffective ........................................... 40

a. There Was No Basis to "Group" the Production Counts. ........................................ 40

iv

    b.   There Was No Basis to Challenge an Increase in Staples' Offense Level Based on a Determination That He is "A Repeat and Dangerous Sex Offender Against Minors.".......................................... 44

2.  Staples Has Not Demonstrated That His Counsel's Decision Not to Retain an Expert Witness for Sentencing Was Ineffective Assistance of Counsel.......................... 47

3.  Counsel's Sentencing Memorandum Did Not Constitute Ineffective Assistance of Counsel. .......................................... 49

4.  Counsel's Decision to Not Repeat at Sentencing Arguments Made in Staples' Sentencing Memorandum Was Not Ineffective Assistance of Counsel. .............................................. 52

POINT III:

The District Court Did Not Commit Error, Plain or Otherwise, By Adopting the Probation Office's Recommended Offense

v

Level Without Articulating Its Own Guidelines Calculations and By Briefly Describing Its Consideration of the Sentencing Factors in 18 U.S.C. § 3553(a)......55

A.   Background..............................................55

B.   Governing Law .........................................58

C.   Standard of Review ...................................60

D.   Discussion..............................................60

Point IV:

The Within-Guidelines Term of Imprisonment Was Substantively Reasonable.......................................62

A.   Governing Law .........................................62

B.   Standard of Review ...................................62

C.   Discussion..............................................64

CONCLUSION .......................................................66

vi

TABLE OF AUTHORITIES

CASES:

*Chhabra v. United States*,
    720 F.3d 395 (2d Cir. 2013) ................................13

*Davis v. Greiner*,
    428 F.3d 81 (2d Cir. 2005) ...................................14

*Ellerby v. United States*,
    187 F.3d 257 (2d Cir. 1998) ................................39

*Evans v. Cockrell*,
    285 F.3d 370 (5th Cir. 2002) ..............................48

*Gibbons v. Savage*,
    555 F.3d 112 (2d Cir. 2009) ................................52

*Glover v. United States*,
    531 U.S. 198 (2001) ...........................................37

*Gonzalez v. United States*,
    722 F.3d 118 (2d Cir. 2013) ............. 37, 38, 53, 54

*Harrington v. Richter*,
    __ U.S. __, 131 S. Ct. 770 (2011) ................. 26, 38

*Harrington v. United States*,
    689 F.3d 124 (2d Cir. 2012) ......................... 13, 14

*Lafler v. Cooper*,
    __ U.S. __, 132 S. Ct. 1376 (2012) ....................38

vii

*Massaro v. United States*,
538 U.S. 500 (2003)............................................39

*Parisi v. United States*,
529 F.3d 134 (2d Cir. 2008)..............14, 15, 16, 25

*Puckett v. United States*,
556 U.S. 129 (2009)............................................19

*Strickland v. Washington*,
466 U.S. 668 (1984)......................................passim

*Triana v. United States*,
205 F.3d 36 (2d Cir. 2000)..................................38

*United States v. Arevalo (Vigil)*,
628 F.3d 93 (2d Cir. 2010)..................................12

*United States v. Arteca*,
411 F.3d 315 (2d Cir. 2005)....................13, 15, 26

*United States v. Brooks*,
605 F. App'x 50 (2d Cir. 2015) ..........................65

*United States v. Brown*,
__ F. App'x __, 2015 WL 3498746
(2d Cir. June 4, 2015) ..........................................65

*United States v. Broxmeyer*,
699 F.3d 265 (2d Cir. 2012)..........................62, 63

*United States v. Cassesse*,
685 F.3d 186 (2d Cir. 2012)................................58

*United States v. Cavera*,
550 F.3d 180(2d Cir. 2008)...............58, 59, 60, 62

viii

*United States v. Cook*,
   722 F.3d 477 (2d Cir. 2013) ................................. 12

*United States v. Corsey*,
   723 F.3d 366 (2d Cir. 2013) ......................... 59, 61

*United States v. Difeaux*,
   163 F.3d 725 (2d Cir. 1998) ................................ 12

*United States v. Dominguez Benitez*,
   542 U.S. 74 (2004) ............................................. 19

*United States v. Fernandez*,
   443 F.3d 19 (2d Cir. 2006) .......................... 59, 63

*United States v. Frady*,
   456 U.S. 152 (1982) ........................................... 20

*United States v. Garcia*,
   166 F.3d 519 (2d Cir. 1999) ............................... 16

*United States v. Gonzalez*,
   16 F.3d 985 (9th Cir. 1993) ............................... 17

*United States v. Gonzalez*,
   529 F.3d 94 (2d Cir. 2008) ................................ 62

*United States v. Gordon*,
   156 F.3d 376 (2d Cir. 1998) ............................... 15

*United States v. Habbas*,
   527 F.3d 266 (2d Cir. 2008) ............................... 54

*United States v. Hamilton*,
   548 F. App'x 728 (2d Cir. 2013) ......................... 65

ix

*United States v. Harris*,
    38 F.3d 95  (2d Cir. 1994)....................................55

*United States v. Johnson*,
    567 F.3d 40 (2d Cir. 2009)..................................59

*United States v. Leone*,
    215 F.3d 253 (2d Cir. 2000)................................39

*United States v. MacPherson*,
    590 F.3d 215 (2d Cir. 2009)................................19

*United States v. Marcus*,
    560 U.S. 258 (2010)...........................................19

*United States v. Matta*,
    777 F.3d 116 (2d Cir. 2015)................................62

*United States v. Monzon*,
    359 F.3d 110 (2d Cir. 2004)..............15, 17, 18, 23

*United States v. Morris*,
    350 F.3d 32 (2d Cir. 2003)..................................39

*United States v. Oladimeji*,
    463 F.3d 152 (2d Cir. 2006)................................17

*United States v. O'Neil*,
    118 F.3d 65 (2d Cir. 1997)............................47, 54

*United States v. Pearson*,
    570 F.3d 480 (2d Cir. 2009)................................12

*United States v. Peck*,
    496 F.3d 885 (8th Cir. 2007) ..............................46

x

*United States v. Pereira*,
  465 F.3d 515 (2d Cir. 2006) .................................60

*United States v. Rafferty*,
  529 F. App'x 10 (2d Cir. 2013) .................... 44, 45

*United States v. Rigas*,
  490 F.3d 208 (2d Cir. 2007) ...............................63

*United States v. Rigas*,
  583 F.3d 108 (2d Cir. 2009) ...............................63

*United States v. Riggi*,
  649 F.3d 143 (2d Cir. 2011) ...............................12

*United States v. Rosa*,
  123 F.3d 94 (2d Cir. 1997) .................................16

*United States v. Salameh*,
  152 F.3d 88 (2d Cir. 1998) .................................39

*United States v. Salcido-Contreras*,
  990 F.2d 51 (2d Cir. 1993) .................................12

*United States v. Sloley*,
  464 F.3d 355 (2d Cir. 2006) ...............................34

*United States v. Thavaraja*,
  740 F.3d 253 (2d Cir. 2014) ......................... 63, 64

*United States v. Turner*,
  720 F.3d 411 (2d Cir. 2013) ...............................19

*United States v. Vaval*,
  404 F.3d 144 (2d Cir. 2005) ................... 16, 19, 54

xi

*United States v. Verkhoglyad*,
   516 F.3d 122 (2d Cir. 2008).................................59

*United States v. Villafuerte*,
   502 F.3d 204 (2d Cir. 2007)..........................20, 60

*United States v. Wagner-Dano*,
   679 F.3d 83 (2d Cir. 2012)..................................60


FEDERAL STATUTES, RULES AND OTHER AUTHORITIES:

18 U.S.C. § 2251(a) .............................................3, 46

18 U.S.C. § 2251(e) .............................................3, 49

18 U.S.C. § 2252A(a)(5)(B) ....................................3

18 U.S.C. § 2252A(b)(2)............................................3

18 U.S.C. § 3553(a) .........................................passim

18 U.S.C. § 3553(a)(2)............................................53

18 U.S.C. § 3553(c) .................................................58

28 U.S.C. § 2255.................................................39, 40

U.S.S.G. § 2G2.2(b)(4) ...........................................33

U.S.S.G. § 3C1.1.....................................................28

U.S.S.G. § 3D1.2.................................................40, 42

U.S.S.G. § 3D1.2 cmt. n.4 ........................................43

xii

U.S.S.G. § 3D1.2 cmt. n.8 ........................................43

U.S.S.G. § 3D1.4 ....................................................40

U.S.S.G. § 3E1.1 ...................................................31

U.S.S.G. § 3E1.1(a) ............................. 10, 24, 28, 33

U.S.S.G. § 3E1.1(b) ............................. 10, 24, 28, 31

U.S.S.G. § 4B1.1 ............................................ 44, 45

U.S.S.G. § 4B1.5 ....................................... 44, 45, 46

U.S.S.G. § 4B1.5(a) ........................................ 44, 45

U.S.S.G. § 4B1.5(b) ........................................ 44, 45

U.S.S.G. § 4B1.5 cmt. n.2 .......................... 45, 46, 49

U.S.S.G. § 4B1.5 cmt. n4(A) .................................45

U.S.S.G. § 4B1.5 cmt. n.4(B)(i) .............................45

U.S.S.G. § 5G1.2(b) ..............................................57

U.S.S.G. § 5G1.2(d) ..............................................50

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
### Docket No. 14-4035

---

UNITED STATES OF AMERICA,
*Appellee,*

v.

RYAN STAPLES,
*Defendant-Appellant.*

---

## BRIEF FOR THE UNITED STATES OF AMERICA

---

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the defendant's knowing and voluntary waiver of his right to appeal his conviction and sentence should be enforced and his appeal therefore dismissed despite his unsupported claims that he received ineffective assistance of counsel in connection with his execution of a plea agreement containing the waiver, that the government breached the plea agreement, and that he derived no benefit from the plea agreement.

2. Whether the defendant received ineffective assistance of counsel in connection with the plea agreement or sentencing where he has identified neither deficient performance nor prejudice.

2

3. Whether it was procedurally unreasonable and plainly erroneous for the district court, during the defendant's sentencing hearing, to have adopted the Probation Office's recommended offense level without articulating its own guidelines calculations and briefly described its consideration of the sentencing factors in 18 U.S.C. § 3553(a).

4. Whether it was substantively unreasonable and an abuse of discretion for the district court to have imposed consecutive maximum sentences on the three counts of conviction, totaling a 90-year term of imprisonment, where the defendant had been convicted of raping and otherwise sexually molesting three underage male victims, two of whom were his relatives, for the purpose of producing pornographic images and videos of that sexual exploitation, and the sentencing guidelines recommended a life term of imprisonment.

## STATEMENT OF THE CASE

### A. Introduction

Defendant-appellant Ryan Staples appeals from his conviction, following a guilty plea in federal district court in the Northern District of New York (McAvoy, *S.J.*), to three counts of sexual exploitation of a minor for the purpose of producing a visual depiction of such conduct, and the resulting sentence to a 90-year term of imprisonment. Staples claims that he is entitled to appeal his conviction and

3

sentence despite having waived his right to do so in a plea agreement because the agreement and guilty plea were tainted by ineffective assistance of counsel and a government breach of the agreement. Staples' Opening Brief at 13-25. He further argues that "[h]is [guilty] plea and sentence should be vacated" because he was deprived of effective assistance of counsel, *id*. at 15-19, 26-32; and that the sentence imposed was procedurally and substantively unreasonable, *id*. at 32-36.

## B. Procedural History

On November 20, 2013, a federal grand jury in the Northern District of New York returned a four-count indictment charging Staples in Counts One through Three with knowingly using and persuading three different minor victims (one per count) to engage in sexual conduct for the purpose of producing visual depictions of such conduct, in violation of 18 U.S.C. § 2251(a) and (e) [hereinafter "production counts"]; and in Count Four with possession of child pornography involving prepubescent minors and minors who had not attained twelve years of age, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) [hereinafter "possession count"]. The indictment also contained a forfeiture allegation. A. 8-12; Dkt. #7.[1]

---

[1] References to pages of the appendix that Staples filed with this Court are preceded by "A." References to entries in the district court's docket

4

On May 1, 2014, the parties entered into a written agreement by which Staples agreed to plead guilty to the three production counts and the government agreed to move to dismiss the possession count after imposition of sentence.  A. 13-33; Dkt. #12.  The agreement included an appeal waiver.  A. 20.  That same day, Staples pled guilty to Counts One through Three as contemplated by the agreement.  A. 34-57.

On October 14, 2014, the district court sentenced Staples principally to a 360-month term of imprisonment on each of the three production counts, to run consecutively to each other, for a combined 1,080-month (90-year) term of imprisonment, to be followed by a life term of supervised release.  A. 86-87, 94-96; Dkt. #26.  Upon government motion, the court dismissed the possession count.  A. 92-93.  Judgment was entered on October 22, 2014.  A. 94-99; Dkt. #27.  Staples filed a timely notice of appeal on October 23, 2014.  A. 100; Dkt. 30.

Staples is serving his term of imprisonment.

---

report from Case No. 8:13-CR-440-TJM are preceded by "Dkt."  The docket report appears at A. 1-7.

5

## STATEMENT OF FACTS[2]

Staples' prosecution arose from information that United States law enforcement officials received from foreign law enforcement about postings of erotic images of prepubescent males on a foreign website used to exchange child pornography and introduce persons interested in trading child pornography. PSR at ¶¶ 8-16. A federal agent in Albany, NY was able to identify internet protocol ["IP"] addresses employed by the website user who posted those images. *Id*. at ¶ 17. Those IP addresses were associated with the residence where Staples lived with his wife. *Id*. at ¶ 18.

On October 24, 2013, federal agents executed a search warrant at the residence. *Id*. at ¶ 21. Staples was present. *Id*. Among other things, agents seized a Dell desktop computer from Staples' bedroom and an Azza Ibuy desktop computer. An on-site forensic preview of the Dell computer revealed that it contained images of prepubescent males with their genitals exposed. *Id*. During the investigation, a third party informed law enforcement agents that Staples had used his laptop computer and may have

_____

[2] The facts described in this subsection are based on the presentence investigation report ["PSR"], which Staples has filed with this Court under seal. Other than denying that he had anal sex with one of the minor victims, PSR Addendum, Staples did not object to the facts stated in the PSR. A. 76-77.

6

put child pornography on it. *Id*. at ¶ 23. The third party consented to a search of his laptop computer. *Id*.

Forensic analysis revealed that both the Dell desktop computer and the third party's laptop computer contained images and videos of child pornography involving prepubescent males that Staples produced. *Id*. at ¶¶ 24, 26. Specifically, there were images and videos of four underage male victims, designated in the PSR as V-1 through V-4. *Id*. at ¶ 26. At the time that Staples produced the images and videos, V-1 was nine years old; V-2 was thirteen years old; V-3 was eleven years old; and V-4 was approximately the same age as V-1 (both born in 2000). *Id*. Two of the victims were related to Staples, one lived in the same neighborhood, and one was a classmate of Staples' eldest daughter. *Id*.

Some of these images and videos depicted Staples raping and otherwise molesting the minor victims. The pornographic images and thumbnail images from videos included the following: (a) V-1 and V-3 lying on a bed naked and next to each other with V-3 masturbating; (b) Staples holding V-2's penis between this finger and thumb; (c) Staples licking V-2's erect penis; (d) V-2 lying naked on Staples' bed with Staples masturbating V-2; (e) V-2 holding Staples' penis and performing oral sex on him; and (f) Staples spreading V-2's buttocks to expose his anus to the camera. In addition, a series of thumbnail

7

images from a video shows Staples playing with V-2's penis, V-2 performing oral sex on Staples, and Staples anally penetrating V-2. *Id*. at ¶ 26. In interviews, the victims described Staples giving them alcohol, getting them drunk, giving them unknown pills, and showing them adult pornography. *Id*. at ¶¶ 32-34.

Staples' computers contained images and videos of child pornography other than those that he produced. In all, there were 1,577 images and twelve videos of child pornography on his computer, all of which depicted prepubescent and adolescent boys. *Id*. at ¶ 25. Staples produced 824 of the images. *Id*. Thirty-seven of the images, including the one of Staples anally penetrating V-2, depicted sadomasochistic conduct. *Id*. In total, 94 known victims were depicted in images of child pornography that Staples possessed. *Id*. at ¶ 37. There also was evidence that Staples distributed an image of V-3 that constituted child pornography. *Id*. at ¶ 35.

Staples, who was arrested on the day the search warrant was executed, *id*. at ¶ 7, told investigators that he had no idea how child pornography got on to his computers. *Id*. at ¶ 28. He did not explain how his household items and relatives were in some of the images. *Id*. When asked if he personally downloaded child pornography, Staples said that he could not answer. *Id*. He gave the same answer when asked if

8

the minor males depicted in images on his computers would identify him as having taken the pictures. *Id*.

## SUMMARY OF ARGUMENT

Staples' appeal should be dismissed without consideration of the merits of his claims because he knowingly and voluntarily waived his right to appeal from his conviction and any term of imprisonment of 90 years or less. His alleged bases for avoiding that waiver – ineffective assistance of counsel, a government breach of the plea agreement, and that he derived no benefit from the plea agreement – are unpersuasive.

If this Court does reach the merits of Staples' claims, they should be rejected. There is no support for his claim that he received ineffective assistance of counsel in connection with the plea agreement, guilty plea, or sentencing. Whether the district court's sentence is reviewed for an abuse of discretion or, because Staples voiced no objection at sentencing, for plain error only, it was not procedurally or substantively unreasonable. The district court properly considered the sentencing guidelines and the factors set out in 18 U.S.C. § 3553(a) and imposed a within-guidelines term of imprisonment that took into account the significant and long-lasting harm that Staples inflicted on his victims and reasonably addressed his culpability and dangerousness.

9

**ARGUMENT**

**POINT I:**  **Staples' Appeal Should Be Dismissed Because He Knowingly and Voluntarily Waived His Right to Appeal His Conviction and Sentence and Has Not Demonstrated a Basis for Avoiding the Waiver.**

Staples claims that his plea agreement is unenforceable and the appeal waiver contained therein is void because his attorney in the district court provided ineffective assistance of counsel by permitting him to enter into the plea agreement, including the waiver; the government breached the agreement, freeing him from his obligations under it; and he derived no benefit from the agreement. Staples' Opening Brief at 20-25. These claims lack merit. As a result, the appeal waiver should be enforced and Staples' appeal dismissed.

**A. Background**

In his plea agreement, Staples agreed to (a) plead guilty to the three production counts in the indictment; (b) pay a $300 special assessment; (c) comply with the terms of the plea agreement; and (d) consent to restitution and forfeiture orders. A. 13. In exchange, the government agreed to (a) move after sentencing for dismissal of all remaining counts in the indictment, which meant the

10

possession count; (b) refrain from bringing additional charges for the conduct resulting in the prosecution; (c) comply with the terms of the agreement; (d) recommend a two-level downward adjustment for "acceptance of responsibility" pursuant to U.S.S.G. § 3E1.1(a) under certain conditions; and (e) move for an additional one-level reduction under U.S.S.G. § 3E1.1(b), also under certain conditions. A. 14-15, 19.

As part of the agreement, Staples waived, among other things, his right to appeal or collaterally attack "[t]he convictions resulting from the defendant's guilty plea" and "[a]ny sentence to a term of imprisonment of 90 years or less." A. 20.

During the guilty plea colloquy, the district court confirmed that Staples knew about and understood the appeal waiver provision:

Q:    All right. Now, Mr. Staples, did you sign your plea agreement in this case?

A:    I did, your Honor.

Q:    And did you talk it over with Mr. Anderson before you signed it?

A:    I did, your Honor.

Q:    And did he explain it to you?

11

A:     He did.

Q:     Did you understand it when you signed it?

A:     Yes, your Honor.

Q:     All right. Did you sign it voluntarily?

A:     I did, your Honor.

Q:     The Court understands that after consultation
       with Mr. Anderson both you and he agree that
       it would be in your best interest to waive or
       give up certain appeal rights in connection with
       this matter and according to the agreement,
       you have agreed to waive or give up your right
       to appeal or collaterally attack your conviction
       arising out of this proceeding today and also
       the right to appeal or collaterally attack any
       term of imprisonment of 90 years or less, while
       reserving yourself the right to appeal a higher
       sentence.  Did you understand what you were
       doing when you agreed to give up those appeal
       rights?

A:     Yes, your Honor.

Q:     Did you do that voluntarily?

A:     Yes, your Honor.

12

A. 52-53.

## B. Governing Law

### 1. Enforceability of Appeal Waivers

This Court enforces plea agreement provisions by which criminal defendants knowingly and voluntarily waive their rights to appeal their convictions and sentences within an agreed-upon range. *See. e.g., United States v. Pearson*, 570 F.3d 480, 485 (2d Cir. 2009) ("A defendant's knowing and voluntary waiver of his right to appeal a conviction and sentence within an agreed upon guideline range is enforceable."); *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998) ("A defendant who knowingly and voluntarily enters into a plea agreement containing a waiver of appeal rights and obtains the benefits of such an agreement is bound by the waiver provision."); *United States v. Salcido-Contreras*, 990 F.2d 51, 51-52 (2d Cir. 1993). Such waivers are "presumptively enforceable." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) (quoting *United States v. Arevalo (Vigil)*, 628 F.3d 93, 98 (2d Cir. 2010)). This is particularly true when the district court explains the waiver to the defendant in a "lucid and understandable" way during the plea proceeding. *See United States v. Cook*, 722 F.3d 477, 481-82 (2d Cir. 2013).

13

## 2. The Right to Effective Assistance of Counsel

The Sixth Amendment provides that "the accused" in a "criminal prosecution" enjoys the right "to have Assistance of Counsel for his defence." U.S. Const., amend. VI. It is well-established that this guarantees criminal defendants "effective assistance of counsel." *See, e.g., Strickland v. Washington*, 466 U.S. 668, 685-686 (1984). This right applies "at all critical stages in the proceedings, including the entry of a plea of guilty." *Chhabra v. United States*, 720 F.3d 395, 406 (2d Cir. 2013). "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea . . . to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citations omitted).

Under the so-called "*Strickland* test," to establish a violation of the right to effective assistance of counsel, a defendant "must show that (1) counsel's performance was objectively deficient, and (2) [the defendant] was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland*, 466 U.S. at 687-88).

A defendant's burden "is a heavy one because, at the first step of analysis," this Court "indulge[s] a strong presumption that counsel's conduct falls

14

within the wide range of reasonable professional assistance." *Id*. at 129 (citations and internal quotation marks omitted; brackets added). "The determinative question at this step is not whether counsel deviated from best practices or most common custom, but whether his representation amounted to incompetence under prevailing professional norms." *Id*. at 129-30 (citation and internal quotation marks omitted).

This Court has recognized that a "familiar risk is that, in the illuminating light of hindsight, we might look back and project *ex post* knowledge of consequences on the attorney's *ex ante* selection of one path among the many available to him." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008). "To counteract this inclination to evaluate counsel's performance against insight gained only through the passage of time, *Strickland* requires that '[w]hen assessing whether or not counsel's performance fell below an objective standard of reasonableness . . . under prevailing professional norms,' we must 'consider the circumstances counsel faced at the time of the relevant conduct and . . . evaluate the conduct from counsel's point of view.'" *Id*. (quoting *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688-89)) (brackets in *Parisi*; ellipses in *Davis*).

"To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show

15

that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Arteca*, 411 F.3d at 315. Thus, an attorney provides ineffective assistance of counsel when he gives erroneous legal advice to a criminal defendant and there is a "reasonable probability" that the defendant would not have pled guilty but for receipt of that advice. *See United States v. Gordon*, 156 F.3d 376, 379-81 (2d Cir. 1998) (affirming lower court determination that attorney was ineffective for misinforming defendant that the maximum sentence was 120 months when the applicable guidelines range was 210 to 262 months, causing defendant to reject an offer to plead guilty).

### 3. The Effect on an Appeal Waiver of a Claim of Ineffective Assistance of Counsel

An appeal waiver that results from ineffective assistance of counsel is unenforceable. *See United States v. Monzon*, 359 F.3d 110, 118-19 (2d Cir. 2004). In order to prevail on such a challenge to an appeal waiver, a defendant "must show that the plea agreement was not knowing and voluntary . . . because the advice he received from counsel was not within acceptable standards." *Parisi v. United States*, 529 F.3d at 138 (citations and internal quotation marks omitted). "Everything that occurs prior to a guilty plea or entry into a plea agreement informs a defendant's decision to accept or reject the agreement

16

[but a]n ineffective assistance of counsel claim survives the plea agreement or appeal waiver only where the claim concerns the advice [the defendant] received from counsel." *Id*. (citation and internal quotation marks omitted; brackets in original). Accordingly, "although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does." *Id*. at 138-39 (emphasis in original).

### 4. The Effect on an Appeal Waiver of a Claim of a Government Breach of a Plea Agreement

To determine whether the government has breached a plea agreement, this Court "look[s] to what the parties reasonably understood to be the terms of the agreement," and holds prosecutors to "meticulous standards of performance." *United States v. Vaval*, 404 F.3d 144, 152-53 (2d Cir. 2005). A defendant can avoid an appeal waiver in a plea agreement if the government has breached the agreement. *See United States v. Garcia*, 166 F.3d 519, 521 (2d Cir. 1999); *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997) ("A defendant may appeal if the Government breaches the terms of the plea agreement."). Once released from the appeal waiver, a defendant "may raise any claim relating to the sentence, except a contention that first should have

17

been presented to the district court." *United States v. Gonzalez*, 16 F.3d 985, 990 (9th Cir. 1993).

## C. Standard of Review

### 1. Ineffective Assistance of Counsel

When a defendant challenges on appeal the constitutional sufficiency of his attorney's advice, thereby calling into question whether the defendant knowingly and voluntarily entered into a plea agreement in which he waived appellate rights, a mere *claim* of ineffective assistance is inadequate to avoid the effect of the appeal waiver. *See United States v. Oladimeji*, 463 F.3d 152, 155 (2d Cir. 2006) (holding that appeal waiver would be enforced despite unproven claim that ineffective assistance of counsel tainted defendant's acceptance of plea agreements, including an appeal waiver); *Monzon*, 359 F.3d at 118-19 (dictum to the same effect). Rather, the record must affirmatively demonstrate that the ineffective assistance of counsel claim is meritorious. *See Oladimeji*, 463 F.3d at 154-55 (enforcing waiver when "the record does not permit assessment of the claim of ineffective assistance and its potential effect on the appeal."). As this Court has explained:

> [W]e reject the notion that an appeal waiver becomes unenforceable simply because a defendant "claims" . . . ineffective assistance of counsel. The appeal waiver would be

18

unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious. But if the record on appeal shows that that claim lacks merit, the appeal should be dismissed because the waiver should be enforced. Similarly, if the merits of the ineffective-assistance-of-counsel claim cannot be determined on the basis of the record on appeal, it is appropriate to enforce the appeal waiver and dismiss the appeal. If the rule were otherwise, a defendant who secured the benefits of a plea agreement by, *inter alia*, knowingly and voluntarily waiving the right to appeal could escape the fairly bargained-for appeal waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit. To find an appeal waiver unenforceable simply because the defendant makes the claim, where the record (a) indicates that the appeal waiver was knowing and voluntary and (b) does not show merit in the ineffective-assistance-of-counsel claim, would render the plea bargaining process and the resulting agreement meaningless.

*Monzon*, 359 F.3d at 118-19 (citation and quotation marks omitted; brackets and ellipsis added).

19

## 2. Government Breach of Plea Agreement

Although this Court reviews a plea agreement and the government's compliance *de novo* when a defendant properly preserves a claim of breach, *Vaval*, 404 F.3d at 152, when the claim is not raised in the district court, the plain error standard of review applies. *See, e.g., Puckett v. United States*, 556 U.S. 129, 134-36 (2009) (holding that plain error standard applies when defendant fails to object to an alleged government breach of plea agreement in district court); *United States v. MacPherson*, 590 F.3d 215, 216 (2d Cir. 2009) (recognizing that *Puckett* requires application of plain error standard in this context).

Under the plain error standard, an appellate court may, in its discretion, correct an error not raised below, but only when the defendant has shown that: (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the [defendant's] substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett*, 556 U.S. at 135. The defendant bears the burden of showing plain error. *See United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004); *United States v. Turner*, 720 F.3d 411, 427 (2d Cir. 2013).

20

This Court "keep[s] in mind the Supreme Court's guidance that reversal for plain error should 'be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

## D. Discussion

Staples' efforts to avoid the effect of the appeal waiver are unavailing because, contrary to his claims on appeal, (1) he knowingly and voluntarily waived his right to appeal from his conviction and any sentence of 90 years or less; (2) he has not demonstrated ineffective assistance of counsel in connection with his decision to execute a plea agreement that included an appeal waiver; (3) the government did not breach the plea agreement, whether its conduct in the district court is reviewed *de novo* or for plain error; and (4) Staples derived benefit from the plea agreement. As a result, the appeal should be dismissed without consideration of the merits of Staples' appellate claims.

### 1. Staples Knowingly and Voluntarily Waived His Right to Appeal.

As described above, Staples and his attorney signed a plea agreement in which he waived his right to appeal his conviction and any term of imprisonment of 90 years or less. A. 20, 32-33. The

21

agreement explained that each of the three counts in the indictment to which Staples was pleading guilty carried a statutory maximum sentence of 30 years and a minimum sentence of 15 years. A. 15. The agreement also made clear that the sentencing judge had discretion to impose consecutive sentences. A. 22. In the agreement, Staples acknowledged that he read each provision in the agreement with the assistance of his attorney, that he understood those provisions, and that his agreement to plead guilty was voluntary. A. 32. Staples told the district court at his change of plea hearing that he understood the charges against him and the consequences of pleading guilty. A. 38-39. Staples also told the court that his attorney advised him of his rights, that he was satisfied with counsel's performance to date, that he discussed the plea agreement with his counsel, that he understood the agreement when he signed it, that he signed the agreement voluntarily, and that he was pleading guilty freely and voluntarily. A. 44-45, 52-53. After a clear and understandable explanation from the court, Staples acknowledged voluntarily waiving his appeal rights. A. 53. Under these circumstances, there is no basis for a determination that the appeal waiver was not made knowingly and voluntarily.

## 2. Staples' Attorney Did Not Provide Ineffective Assistance of Counsel in Connection with the Plea Agreement.

Staples seeks to avoid the effect of his waiver by claiming ineffective assistance of counsel.

22

Significantly, he does not identify any defective or mistaken advice received from his counsel in the district court.[3]    Rather, he argues that the plea agreement and waiver were so unfavorable to Staples that his attorney provided ineffective assistance by permitting Staples to execute the agreement. Specifically, he claims that the terms of the agreement – particularly the inclusion of the waiver of the right to appeal any sentence of 90 years or less – were "objectively unreasonable" and that Staples received no real benefit from it.  He reasons that had Staples demanded a trial or pled guilty without an agreement, thereby preserving his right to appeal, he would have been exposed to only an additional ten-year period of incarceration (the maximum term of imprisonment for the possession count that was dismissed pursuant to the plea agreement), which, he contends, would matter little if added to the 90-year term that the district court imposed.  Staples also argues that the "minimal time" that defense counsel expended on his case further demonstrates that the legal assistance was ineffective.  Staples' Opening Brief at 13-19.

---

[3] At most, Staples alleges, without a basis in the record, that counsel did not present to him the option of pleading guilty without an agreement.  Staples' Opening Brief at 19.

23

Staples claim fails for several reasons. First, the record is devoid of evidence concerning advice that counsel provided to him concerning the plea agreement or the role, if any, such advice played in Staples' decision to enter into the agreement. Even if the terms of the agreement are "objectively unreasonable," or better options were available to Staples (points that the government does not concede), this does not establish that counsel provided faulty advice or that his assistance was otherwise ineffective. Because "the merits of the ineffective-assistance-of-counsel claim cannot be determined on the basis of the record on appeal, it is appropriate to enforce the appeal waiver and dismiss the appeal." *Monzon*, 359 F.3d at 119.

Second, even if this Court were to assume that Staples' decision to enter into the plea agreement and plead guilty resulted from advice of counsel, Staples' criticism of his counsel's assistance in the district court is unfounded. The plea agreement was a reasonable option under the circumstances. Staples was faced with compelling and unimpeachable evidence, including his possession of digital images and videos depicting him exploiting, molesting, and raping underage boys, along with other images and videos of child pornography. As a result, Staples and his attorney were in an unenviable bargaining position. The plea agreement provided Staples with the possibility of a term of imprisonment as low as fifteen years, which was the statutory minimum;

24

dismissal of the possession of child pornography charge; and a guarantee that he would not be prosecuted for other offenses related to his criminal conduct in this matter, including his distribution of some of the child pornography that he produced. The agreement also provided that the government would recommend and move for acceptance of responsibility reductions under U.S.S.G. § 3E1.1(a) and (b) if Staples satisfied certain conditions. More generally, the agreement provided Staples a means of promptly demonstrating remorse, which may have been his best and only chance of convincing the sentencing court to be lenient.

If Staples rejected the plea agreement and stood trial – one of the courses of action he now criticizes his trial attorney for not pursuing – his conviction was almost certain[4] and he would have squandered an opportunity to persuade the district court that he was contrite and deserving of leniency at sentencing. The other course of action that Staples now claims was preferable – a plea of guilty to all counts in the indictment with no agreement and thus no waiver of appeal – would have left Staples exposed to sentencing on the possession count (along with the production counts) and possible prosecution for other charges arising from his conduct. It also would have

---

[4] Defense counsel informed the district court that he was not aware of any defenses that would prevail if the case went to trial. A. 56.

25

deprived him of the government's conditional agreement to recommend and move for acceptance of responsibility reductions and may have been less effective as a means of communicating his contrition to the district court.

Staples focuses on the fact that these alternative courses of action requiring no appeal waiver would have exposed Staples to only an arguably meaningless 10-year term of imprisonment above the 90-year term that the district court imposed. Staples Opening Brief at 11-12. This analysis is misguided. When Staples entered into the plea agreement, he did not know what sentence would be imposed and how the terms of the plea agreement might prove to be beneficial. As *Parisi* makes clear, assistance of counsel should not be measured by "*ex post* knowledge of consequences on the attorney's *ex ante* selection of one path among the many available to him." 529 F.3d at 141. That the potential advantages from the plea agreement did not materialize does not render advice to enter into the agreement (assuming that counsel gave such advice here) ineffective assistance of counsel.

Nor was Staples' waiver of appellate rights as part of the plea agreement an unreasonable concession. There was no reason to believe that the district court would commit reversible error during the change of plea hearing or at sentencing. Accordingly, even if Staples' decision to enter into the plea agreement was

26

based on advice of counsel, that advice was not
"incompetence under prevailing professional norms."
*Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770,
788 (2011) (internal quotation marks and citation
omitted).

Third, Staples has offered only a bare allegation
that "had he received proper and competent advice,
he would either have gone to trial and put the
Government to its proof, or entered a guilty plea to
all charges without a waiver of appellate rights . . . ."
Staples' Opening Brief at 11.[5]  This is insufficient to
meet his burden under the second prong of *Strickland*
of showing a "reasonable probability" of a different
outcome as a result of the alleged ineffective
assistance of counsel.  *See Arteca*, 411 F.3d at 322
(upholding district court's rejection of affidavit
alleging that defendant would have gone to trial had
he not received faulty advice concerning sentencing
and noting "[t]he weight of authority among our
sister circuits hold[ing] that a self-serving and
conclusory statement of this kind is insufficient in

---

[5] Elsewhere, Staples equivocates.  *See id*. at 18
("Beyond the woefully inadequate and substandard
performance of defense counsel, there is the issue of
whether the result would have been different if
Staples had received effective assistance.  While no
one can know that for certain, there were options and
avenues that should have been explored . . . .").

27

itself to show prejudice in the context of guilty pleas") (citations omitted).

Finally, Staples' criticism of the amount of time counsel devoted to his case does not demonstrate that there was ineffective assistance of counsel. His attorney had been practicing law for 19 years, including six years as defense counsel. A. 54. He was familiar with the sentencing guidelines as applied to the charges against Staples. *Id*. At the time of the guilty plea, he had spent approximately five hours in "direct consultation" with Staples and approximately 12 hours with "preliminary calculations." A. 55. He also spent "[p]robably three to four hours of research time." *Id*. Staples told the district court at the change of plea hearing that he was satisfied with what defense counsel had done for him. A. 44. He also confirmed that counsel discussed the plea agreement with him before he signed it. A. 52. Under these circumstances, counsel's time commitment to Staples' defense was not constitutionally deficient.

### 3. The Government Did Not Breach the Plea Agreement.

Staples further contends that this Court should not enforce the appeal waiver because the government, by urging the district court to deny him credit for acceptance of responsibility, breached the plea agreement. Staples' Opening Brief at 21-23.

28

Because Staples failed to satisfy conditions described in the plea agreement, conditions upon which the government's obligations concerning acceptance of responsibility credit were based, there was no breach and thus no basis for non-enforcement of the appellate waiver.

### a. The Acceptance of Responsibility Provisions in the Plea Agreement

As noted above, the plea agreement obligated the government, upon fulfillment of certain conditions, to both recommend a two-level downward adjustment to Staples' offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and move for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b). A. 19. The government recommendation regarding the two-level reduction was conditioned on the government being convinced, "through the time of sentencing" that "the defendant has demonstrated 'acceptance of responsibility' for the offenses to which the defendant is pleading guilty," and, after signing the agreement, not committing "any other federal, state, or local crimes" or engaging "in conduct that constitutes 'obstruction of justice,' as defined in U.S.S.G. § 3C1.1." *Id.* The government's agreement to move for the additional one-level reduction was conditioned on, among other things, the government being convinced "that the defendant has accepted responsibility within the meaning of U.S.S.G. § 3E1.1(a)." *Id.*

29

### b. The Factual Basis in the Plea Agreement and at the Change of Plea Hearing

The plea agreement sets out facts supporting Staples' plea of guilty to the three production counts alleged in the indictment and related conduct. This factual basis section begins with a preamble that states that "[t]he defendant admits the following facts . . . ." A. 16. With respect to Count Two, the plea agreement sets out the following facts, among others:

> In or about September 2010, the defendant employed, used, persuaded, induced, enticed and coerced a 13 year old minor, Victim 2 ("V2"), to take part in sexually explicit conduct. The defendant videotaped and photographed V2 and the defendant engaged in sexually explicit conduct, including oral sex and anal sex.

A. 18.

At the change of plea hearing, the prosecutor repeated these facts, referring again to the defendant videotaping and photographing himself engaging in oral and anal sex with V-2. A. 48. At the end of the prosecutor's recitation of all of the facts, Staples acknowledged hearing what the prosecutor "said about what you did in this case" and, when asked

30

"[i]s this what you did," answered "yes, Your Honor." A. 49.

Staples' written and oral admissions concerning his anal rape of V-2 were consistent with the description in the PSR of a series of images from a video found on Staples' computer. See PSR at ¶ 26h ("Then, the defendant is depicted engaging in anal sex with V-2.").

### c. Staples' False Denial of a Material Fact

Despite this, when interviewed by the Probation Office for purposes of preparation of the PSR, Staples denied "he had engaged in anal sex with V-2 as outlined in the factual basis." PSR at ¶ 39. He noted that "there was 'no anal sex in that instance' and later stated he 'does not recall having anal sex with anyone.'" *Id*. After these denials, Staples' attorney viewed the video "and advised it was very clear there was anal sex depicted in the photos/videos." *Id*.

Based on Staples' denials, the government objected to the Probation Office's decision to give Staples credit for acceptance of responsibility. PSR Addendum. In his response to the initial draft of the PSR, Staples reiterated his denial of anal sex with V-2. *Id.* In response to the government's position, Staples asserted "that aside from the alleged anal sex with Victim 2, [he] has admitted full responsibility

31

for many of the acts of other types of sexual conduct and contacted [sic] with the three identified victims in this matter," has "expressed his profound remorse" for the harm to the victims, and has proposed chemical castration as a possible solution. *Id*.

Responding to this input from both parties, the PSR noted:

> Regarding the Government's objection to the defendant receiving the 2 level reduction pursuant to U.S.S.G. § 3E1.1 (Acceptance of Responsibility), the probation officer maintains that although the defendant's acceptance of responsibility may be minimal, given his denial of engaging in anal sex with Victim 2, when the videos clearly indicate he did so, as acknowledged by defense counsel, the defendant has met the criteria for a reduction under U.S.S.G. § 3E1.1.

*Id*.[6]

---

[6] The PSR stated that the government would make a motion under U.S.S.G. § 3E1.1(b) for an additional one-level acceptance of responsibility reduction. PSR at ¶ 75. Because such reduction is predicated on an offender "qualify[ing] for a decrease under subsection (a)," a condition the government believed was not fulfilled here, the PSR was mistaken in this regard.

32

In its sentencing memorandum, the government reiterated its position that Staples was not entitled to acceptance of responsibility credit based on his false denial of anal sex with V-2. A. 62-63. The government also noted that whether Staples received such credit was immaterial because his offense level would be 43 in either event. A. 63-64.

Staples' sentencing memorandum accepted the guidelines computation in the PSR without discussing the acceptance of responsibility credit. A. 68. The defense sentencing memorandum did not contend that the government's objection to such credit was a breach of the plea agreement. At sentencing, Staples did not identify any additional factual errors in the PSR, A. 76, and did not discuss the issue of acceptance of responsibility or allege a government breach of the plea agreement. The government noted at sentencing that Staples "still refuses to accept full responsibility for what he did" by denying that he engaged "in anal sex with one of the victims despite clear evidence to the contrary." A. 78.

### d. Discussion

Staples' repeated false denials of having engaged in anal intercourse with V-2, conduct that even his attorney admitted was captured on video, were a sufficient basis for the government to reasonably determine that it was not convinced that Staples

33

demonstrated "acceptance of responsibility" for the offenses to which he pled guilty. Count Two of the indictment included as an element that Staples "employed, used, persuaded, induced, enticed, and coerced V-2 to take part in sexually explicit conduct . . . ." A. 9, 16. In addition, the nature of Staples' sexual exploitation of V-2 was relevant to whether the sentencing enhancement in U.S.S.G. § 2G2.2(b)(4) (offense involved material that portrays sadistic conduct or depicts violence) applied. *See* PSR at ¶ 55 (applying four-level increase because of anal sex). By denying the most egregious and harmful instance of the "sexually explicit conduct," Staples did not "clearly demonstrate acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).

Staples offers two arguments in support of his claim that the government's opposition to acceptance of responsibility credit was a breach of the plea agreement. First, he posits that his admission during the plea colloquy to having anal sex with V-2 was mistaken, the result of an intimidated "layman, charged with a horrific crime, facing a Federal judge in the well of a courtroom, surrounded by United States Marshals, federal prosecutors, and his lawyer," one who did not admit to such conduct in his own words, but instead only replied "yes" to the government's "complex" factual recitation containing "technical statutory language." Staples' Opening Brief at 21-22. This argument ignores both that Staples also admitted to anal sex in the plea

34

agreement, A, 18, which he read and discussed with his attorney before signing, and that, as his lawyer admitted, the sex act Staples later would repeatedly deny was captured on video. Thus, as Staples well knew and admitted in his plea agreement and during his change of plea hearing, that act occurred, despite his later false denials.

Second, Staples argues that "[t]his *de minimis* and immaterial denial does not in any way vitiate the defendant's acceptance of responsibility for the crimes for which he was indicted and entered his plea." Staples' Opening Brief at 22. But, the government was entitled to conclude that Staples' false denial was neither *de minimis* nor immaterial. As noted above, Staples' act of anal sex with V-2 proved one of the elements of the offense – that he "employed, used, persuaded, induced, enticed, and coerced" the victim to take part in sexually explicit conduct and had a bearing on whether a sentencing enhancement applied. Ultimately, the question here – as made clear by the terms of the plea agreement – is whether the government had a good faith basis to not be convinced that Staples clearly accepted responsibility. S*ee United States v. Sloley*, 464 F.3d 355, 361 (2d Cir. 2006) (finding no breach of a plea agreement that conditioned the government's agreement to a sentencing reduction on the defendant's "acceptance of responsibility, *to the satisfaction of the government*" when there was no showing of bad faith in the government's refusal to

move for such reduction) (emphasis added). Staples has not alleged, much less proven that the government's determination that it was unconvinced of his acceptance of responsibility was made in bad faith.

### 4. Staples Derived Benefit From the Plea Agreement.

Staples' claim that the appeal waiver should not be enforced because he derived no benefit from the plea agreement suffers from the deficiency identified above, see pages 23-26, *supra*, that is, his consideration of the consequences of the plea agreement *ex ante* rather than *ex post*. As already explained, the agreement resulted in the dismissal of a possession of child pornography count, allowed for a term of imprisonment of 15 years, capped Staples' sentencing exposure at 90 years, guaranteed him that no new charges would be added even though there was evidence supporting distribution of child pornography charges, and conditionally guaranteed him a government recommendation of and motion for acceptance of responsibility credit. All of those aspects of the agreement were tangible benefits that merit enforcement of the appellate waiver. That Staples chose not to fully accept responsibility and that the district court chose to sentence him to the statutory maximum term of imprisonment does not mean that he did not receive benefits from the plea agreement.

36

### 5. Conclusion

Staples knowingly and voluntarily waived his right to appeal his conviction and sentence as part of a plea agreement from which he derived benefit. He has not established that his attorney provided ineffective assistance of counsel in connection with the plea agreement or that the government breached the agreement. Accordingly, his appeal should be dismissed without consideration of the merits of his claims.

**Point II:     Staples Did Not Receive Ineffective Assistance of Counsel in Connection With the Plea Agreement or Guilty Plea, or at Sentencing.**

Staples argues that he received ineffective assistance of counsel in connection with the plea agreement and at sentencing. Staples' Opening Brief at 13-19, 26-32. It is not clear whether Staples claims ineffective assistance in connection with the plea agreement only as a reason for voiding the appeal waiver (as discussed above) or also as a basis for vacating his conviction. The government will assume that he means to assert the latter claim as well as the former. *See id*. at 11 (arguing that "his plea and sentence must be vacated, because he did not receive effective assistance of counsel").

37

Staples contends that counsel was ineffective at sentencing by failing to object to certain guidelines enhancements, not seeking appointment of a "psychologist or psychiatrist" for the purpose of making mitigation arguments at sentencing; submitting a deficient sentencing memorandum; and not advocating for Staples at the sentencing hearing. *Id*. at 26-32. These claims lack merit.[7]

## A. Governing Law

Application of the *Strickland* ineffective assistance of counsel in the context of plea agreements and guilty pleas is explained at pages 13-15, *supra*. A defendant's right to effective assistance of counsel, as described in *Strickland*, also applies at sentencing. *See, e.g., Glover v. United States*, 531 U.S. 198, 202-204 (2001) (holding that an increase in a guidelines range resulting in longer prison term qualifies as "prejudice" under *Strickland*); *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) ("A defendant in criminal proceedings has a right

---

[7] Staples also criticizes counsel for not seeking appointment of "[a]n expert on child pornography" to assist the defense in determining whether or not to plead guilty or go to trial. *Id*. at 27-28. Staples does not elaborate on what it means to be an "expert on child pornography" or how his attorney's failure to seek guidance from such an expert was constitutionally deficient performance that prejudiced him.

38

under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include . . . sentencing."). In addition to demonstrating deficient performance under the first prong of *Strickland*, "[w]ith respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1384 (2012). In evaluating whether the proceeding would have been different but for counsel's error, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.

## B. Standard of Review

Whether a defendant's representation "violates the Sixth Amendment right to effective assistance of counsel is a mixed question of law and fact that is reviewed *de novo*." *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (internal quotation marks omitted). This Court has held that "[w]hen faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus

39

pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003) (citing *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000)). This Court has a "baseline aversion to resolving ineffectiveness claims on direct review," *United States v. Salameh*, 152 F.3d 88, 161 (2d Cir. 1998), and is cognizant of the Supreme Court's statement in *Massaro v. United States*, 538 U.S. 500, 504 (2003), that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Morris*, 350 F.3d at 39. But, "[i]f an ineffective assistance claim brought on direct appeal is not plausible, [the Court] can reject it without any further factual development." *Ellerby v. United States*, 187 F.3d 257, 259 (2d Cir. 1998).

## C. Discussion

Here, the record is sufficiently well developed for this Court to reject Staples' ineffective assistance of counsel claims on direct appeal. To the extent that Staples seeks reversal by alleging that his counsel provided ineffective assistance in connection with the plea agreement, his claim should be rejected for the reasons described at pages 21-27, *supra*. The deficiencies in Staples' attack on counsel's representation in connection with sentencing are discussed below. If this Court concludes that further factual development is necessary with respect to

40

counsel's representation, it should affirm, enabling Staples to raise these claims in a § 2255 motion.

## 1. Counsel's Decision Not to Raise Baseless Objections to Recommended Guidelines Enhancements Was Not Ineffective.

### a. There Was No Basis to "Group" the Production Counts.

Staples first argues that counsel provided ineffective assistance by failing to object to the PSR's recommendation that the three counts of conviction – the production counts – not be "grouped together into a single Group" pursuant to U.S.S.G. § 3D1.2. Staples' Opening Brief at 26-27 (characterizing this as "[t]he most significant failure in regard to the PreSentence [sic] Report").

When an offender is convicted of multiple counts, U.S.S.G. § 3D1.2 requires, for purposes of calculating the guidelines offense level, the so-called "grouping" into a single "Group" of "closely related counts," that is, counts of conviction "involving substantially the same harm." When two or more counts of conviction do not qualify for such "grouping" under U.S.S.G. § 3D1.2, application of a separate guidelines provision, U.S.S.G. § 3D1.4, can result in an increase in the total offense level.

41

Here, the PSR recommendation to analyze the three production counts – each of which involved Staples sexually exploiting and producing child pornography of a different victim on a different day – separately instead of as a "Group," *see* PSR at ¶ 43, resulted in a three-level increase to Staples' total offense level. *Id.* at ¶¶ 69, 71. Staples' contention – that his attorney's failure to oppose this increase was ineffective – fails because the PSR's treatment of these counts was consistent with the clear language of the applicable guidelines.

Contrary to Staples' contention, there is no basis to "group" the three production counts. Section 3D1.2 sets out the four categories of counts that are properly "grouped" because they involve substantially the same harm. Categories (a) and (b) apply when multiple counts "involve the same victim." Here, as noted above, each count of conviction involved a different victim, *see* A. 9-11; PSR at ¶¶ 1(a) – (c), 26. Category (c) applies only "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." Category (d) applies only "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." The circumstances

42

described in categories (c) and (d) are not present here and Staples does not argue otherwise.

Rather, Staples contends that "a careful reading of the Guidelines and Application Notes leads to the conclusion that a reasoned argument can be made that the defendant's conduct was part of a single course of conduct involving common victims." Staples' Opening Brief at 26. Without explanation, he further contends that the circumstances he claims to have existed "would require the grouping of the counts of conviction . . . ." *Id*. at 26-27. Staples does not elaborate on the meaning of "common victims," which may denote nothing more than victims who all were sexually exploited by Staples. In any event, the guideline does not provide for grouping of counts involving "common victims," only those involving "the same victim." To permit grouping based on the identity of the assailant, not that of the victim, would be inconsistent with the objective of grouping only those counts involving "substantially the same harm." U.S.S.G. § 3D1.2.

Further, the Application Notes undermine Staples' claim that there is a reasoned argument favoring grouping here, where each of the three groups involved a different act of sexual exploitation. Note 4 provides examples of grouping "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or

43

plan." It explains that even if a "defendant is convicted of two counts of rape for raping the *same person on different days* . . . [t]he counts are not to be grouped together." U.S.S.G. § 3D1.2 cmt. n.4 (emphasis added). If this is true, then grouping cannot be required when the offender has sexually exploited different victims on different days. Indeed, elsewhere the Application Notes provide:

> A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because it probably would require departure in many cases in order to capture adequately the criminal behavior. Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together.

*Id*. at n.8.

Consistent with these Application Notes, this Court has held that production of child pornography counts should not be "grouped" when the crimes

44

occur on different days, even if they involve the same victim. *See United States v. Rafferty*, 529 F. App'x 10, 13 (2d Cir. 2013) (summary order) ("After reviewing *de novo* the District Court's legal determination not to 'group' the four child pornography production counts, we conclude that the District Court did not err in this regard.").

### b. There Was No Basis to Challenge an Increase in Staples' Offense Level Based on a Determination That He is "A Repeat and Dangerous Sex Offender Against Minors."

Staples also argues that counsel's assistance was ineffective because he failed to object to the recommendation in numbered paragraph 73 of the PSR of a five-level increase to his offense level as a repeat and dangerous sex offender against minors pursuant to U.S.S.G. § 4B1.5(b). Staples' Opening Brief at 27. Because this enhancement was properly applied, this claim also lacks merit.

Section 4B1.5 has two subparts, the first of which, subsection (a), applies only when an offender has committed the offense of conviction "subsequent to sustaining at least one sex offense conviction," U.S.S.G. § 4B1.5(a), and thus is inapplicable here. Subsection (b) applies "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this

45

guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b).

All of the requirements set out in subsection (b) were satisfied here. Specifically:

- For purposes of this guideline, Application Note 2 provides a list of offenses that qualify as "a covered sex crime," U.S.S.G. § 4B1.5 cmt. n.2. As explained below, Staples' production of child pornography offenses fall within this list.

- Application Note 4(B)(i) explains that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id*. at n.4(B)(i). As explained in the PSR at ¶ 26, that occurred here.

- Production of child pornography qualifies as "prohibited sexual conduct." *Id*. at n.4(A).

- Neither U.S.S.G. § 4B1.1, which applies only when a defendant is a "career offender" as defined in that guideline, nor § 4B1.5(a), which, as noted above, requires a sex offense conviction, applies here.

46

Staples nonetheless argues that "a careful parsing of the Guidelines and Application Notes shows that trafficking in child pornography does not constitute a covered sex crime for purposes of this enhancement," and that district court counsel's failure to consider and raise such a claim "once again demonstrate[ed] his total abdication of responsibility and his ineffectiveness." Staples' Opening Brief at 27. This criticism is meritless. Application Note 2 provides in part that "a covered sex crime" includes "an offense, perpetrated against a minor . . . under (ii) chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense . . . ." U.S.S.G. § 4B1.5 cmt. n.2. Because Staples was convicted of three counts of "sexual exploitation of children" (the production counts), in violation of 18 U.S.C. § 2251(a), which is located in chapter 110 of Title 18 of the United States Code, and not "trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense," his offenses of convictions clearly were "covered sex crimes." *See, e.g., United States v. Peck*, 496 F.3d 885, 890 (8th Cir. 2007) ("Peck does not dispute that his conviction for production of child pornography in violation of 18 U.S.C. § 2251(a) constitutes a 'covered sex crime.'").

In short, an objection to either of the two guidelines enhancements upon which Staples now relies to claim ineffective assistance of counsel would have been frivolous. Therefore Staples cannot show

47

either deficient performance or prejudice from his counsel's failure to make such objections. *See United States v. O'Neil*, 118 F.3d 65, 73-74 (2d Cir. 1997) (rejecting claim that failure to raise certain objections to the presentence report was ineffective assistance of counsel when claims were "without merit").

## 2. Staples Has Not Demonstrated That His Counsel's Decision Not to Retain an Expert Witness for Sentencing Was Ineffective Assistance of Counsel.

Staples argues that he suffered from ineffective assistance in the district court because his counsel did not seek court appointment of a psychiatrist or psychologist for sentencing. He contends that "[o]nce the decision to plead guilty was made, the defendant should have been examined by a psychologist or psychiatrist, whose insight and evaluation were necessary for arguments to be made in mitigation at sentencing." Staples suggests that such expert involvement "may well have provided substantial mitigating evidence and resulted in a much lower sentence" particularly in light of the childhood abuse that Staples reported to the probation officer. Staples' Opening Brief at 27-28. Because Staples' claim regarding expert involvement is both vague and speculative, it should be rejected.

The PSR contained a description of Staples' personal and family history, including that his parents

48

were "severe alcoholics" and his mother was "emotionally abusive." PSR at ¶ 83. It also described his account of having been sexually abused as a child, including oral and anal sex, by an adult male who befriended him while Staples was in the Boy Scouts. *Id*. at ¶ 84. The PSR described Staples' suicidal ideation and history of substance abuse. *Id*. at ¶¶ 91-92. Staples' sentencing memorandum elaborated on the effects of Staples' sexual victimization: "It can only be assumed that the trauma suffered at such a young age, combined with an emotionally abusive and absent mother, informed Staples' future desires and actions upon those desires. It is not a stretch to say that, but for the defendant's own victimization, he would not have become a victimizer." A. 71. The district court was familiar with this information, having received and reviewed the PSR and Staples' sentencing memorandum. A. 76.

Staples's brief is silent about what a psychiatrist or psychologist would have added to the record, why such involvement would have been helpful to Staples, and how it might have affected his sentence. Accordingly, he has not satisfied his burden of showing either deficient performance or prejudice. *See, e.g., Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("Evans' unsupported claims regarding the uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel.").

49

### 3. Counsel's Sentencing Memorandum Did Not Constitute Ineffective Assistance of Counsel.

Staples also contends that district court counsel's sentencing memorandum demonstrated ineffective assistance of counsel because (a) there was no argument for the sentences on each count to be concurrent, not consecutive to each other; (b) there was no contention that Staples' crimes "were part of a single course of conduct, not separate and distinct acts"; and (c) it included passages stating that there is no excuse for Staples' crimes and acknowledging the harm that Staples caused. Staples' Opening Brief at 28-31. These claims lack merit.

The PSR calculated Staples' offense level to be 50 without credit for acceptance of responsibility and 47 with such credit. PSR at ¶¶ 73, 76. Under the sentence guidelines, in rare cases in which an offender's offense level exceeds 43 (the upper end of the guidelines' sentencing table), it is treated as an offense level of 43. *See* Chapter 5, cmt. n.2 ("An offense level of more than 43 is to be treated as an offense level of 43."). An offense level of 43 yields a recommended life term of imprisonment without regard to criminal history. Because each of the three counts of conviction here had a 30-year statutory maximum term of imprisonment, *see* 18 U.S.C. § 2251(e), the closest the district court could come to imposing the recommended life term of

50

imprisonment was to make the maximum 30-year terms of imprisonment for each count run consecutively. *See* U.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."). This is how the district court chose the within-guidelines 1,080-month term of imprisonment. A. 86-87.

In his sentencing memorandum, Staples's counsel argued for a below-guidelines sentence. A. 71-73. Under the above-described circumstances, the district court could have imposed a less severe sentence by selecting a term of imprisonment below the 30-year maximum on one or more counts of conviction, by making one or more the sentences run concurrent to the other sentences, or by both means. The effect of all three approaches would be the same – a sentence below 1,080 months. Accordingly, what Staples' attorney did – seek a below-guidelines sentence – was tantamount to doing what Staples claims that he was deficient for not doing – seeking concurrent sentences. As a result, Staples first perceived deficiency in the sentencing memorandum is non-existent.

Counsel's failure to characterize Staples' convictions, arising from his sexual exploitation of

51

three different minor victims in three different
months – July, September, and October 2010 – as
"single course of conduct" was not ineffective
because, as explained at pages XX, *supra*, such
characterization, even had it been factually plausible,
would not have changed Staples offense level. Nor
do the common features of Staples' sexual
exploitation of different underage victims for the
purpose of producing child pornography in different
months – that two were related, that more than one
victim appeared in some of the images, and that
Staples apparently used similar methods to exploit all
three – have the effect of ameliorating Staples'
culpability or dangerousness. Accordingly, his
counsel's failure to characterize Staples' criminal
conduct as a common course of conduct in the
sentencing memorandum was neither deficient
performance nor prejudicial.

Finally, Staples' criticism of certain candid
passages in the sentencing memorandum is
misplaced. It is clear from the district court litigation
that Staples' attorney, confronted with overwhelming
evidence of his client's horrific offenses, chose what
may well have been the only sensible approach: to
have his client fully accept responsibility for his
crimes and express remorse for what he had done.
Thus, as explained above, Staples eschewed trial and
entered into a plea agreement with the government,
fully admitting guilt, both in the agreement, A. 16-19,
and at the change of plea hearing. A. 49. And, when

52

given an opportunity to address the court at sentencing, Staples was contrite. A. 79-85. It was part of this strategy, and not ineffective assistance of counsel, for Staples' attorney to acknowledge the obvious in the sentencing memorandum: that Staples had no excuse for his criminal conduct and that the sexual exploitation of children causes harm. *See, e.g., Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) ("Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel.").[8]

### 4. Counsel's Decision to Not Repeat at Sentencing Arguments Made in Staples' Sentencing Memorandum Was Not Ineffective Assistance of Counsel.

Staples argues that counsel's decision not to advocate orally at the sentencing hearing was ineffective assistance. Staples' Opening Brief at 31-32. The record belies this claim.

In his sentencing memorandum, Staples' attorney set out authority making clear that the district court

---

[8] That Staples deviated from this strategy by falsely denying anal sex with one of the victims and that the strategy ultimately did not persuade the district court to impose a below-guidelines sentence do not establish that counsel's assistance was ineffective.

53

could impose a below-guidelines sentence, A. 69-71, and asked the district court to do so based on the purposes for sentencing set out in 18 U.S.C. § 3553(a)(2). A. 71. Counsel explained the "trauma" that Staples likely suffered "at a young age" by having been sexually molested by an adult male and by having "an emotionally abusive and absent mother." A. 71. Counsel argued that Staples would have faced a significantly less severe sentence if convicted of murder in federal court, rendering a 90-year term of imprisonment "excessive and unduly punitive." A. 72. He also explained that "Mr. Staples has reestablished his relationship with God," which "has helped him to clearly see the depths of his depravity" and the harm that he caused. A. 72-73. He argued that a below-guidelines sentence "will be 'sufficient, but not greater than necessary'" and a "just and appropriate result." A. 73. At the sentencing hearing, Staples' counsel relied on the comments in his sentencing memorandum and deferred to Staples, who addressed the district court at length. A. 77-85.

The sentencing representation here is a far cry from ineffective assistance of counsel. *See Gonzalez v. United States*, 722 F.3d 118, 135 (2d Cir. 2013) (finding that counsel was ineffective at sentencing when he did not accompany the defendant during an interview with the Probation Office, could not be reached between the defendant's guilty plea and sentencing, "spent no more than 15 minutes with [the

54

defendant] discussing the PSR," did not submit a sentencing memorandum, failed to seek leniency based on the defendant's attempted cooperation with the government, failed to seek a downward departure, and ultimately "did little more than simply attend [the defendant's] sentencing hearing"). Indeed, other than complaining that "[n]o defense attorney worthy of the name would stand virtually mute when a client faces a lifetime of incarceration," Staples' Opening Brief at 31, Staples now offers no suggestions about what his counsel should have advocated at sentencing other than to "argue for concurrent sentences of far less than the maximum sentence." *Id.*

Even if counsel's performance in connection with sentencing was constitutionally deficient, Staples has not established a "reasonable probability that . . . the alleged inadequate representation would have altered the outcome of . . . his sentencing." *United States v. O'Neill*, 118 F.3d 65, 72-73 (2d Cir. 1997); *see also United States v. Habbas*, 527 F.3d 266, 273-74 (2d Cir. 2008) (rejecting ineffective assistance of counsel claim in connection with sentencing when defendant was unable to establish prejudice); *United States v. Vaval*, 404 F.3d 144, 148, n.1 (2d Cir. 2005) (rejecting ineffective assistance claim based on counsel's failure to file a sentencing memorandum because "appellant has not alleged, much less proven, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (quoting *Strickland*,

55

466 U.S. at 694); *United States v. Harris*, 38 F.3d 95 100 (2d Cir. 1994) ("Even had sentencing counsel done as Harris claims he should have done, there is no reason to believe the court would have imposed a lighter sentence.").

**POINT III:** **The District Court Did Not Commit Error, Plain or Otherwise, By Adopting the Probation Office's Recommended Offense Level Without Articulating Its Own Guidelines Calculations and By Briefly Describing Its Consideration of the Sentencing Factors in 18 U.S.C. § 3553(a).**

Staples contends for the first time on appeal that the district court committed procedural error at sentencing when it adopted the PSR-recommended guidelines offense level without "explain[ing] how it had arrived at the guidelines offense level" or "analyz[ing] the application of the 3553(a) factors to the defendant, other than in the most cursory fashion." Staples' Opening Brief at 32-34. This claim is meritless.

**A. Background**

As noted above, the PSR calculated Staples' pre-acceptance-of-responsibility offense level to be 50, which, under the guidelines, was properly treated as the maximum offense level of 43. *See* page 49,

56

*supra*.  As Staples now concedes, *id*. at 33, he did not object to this guidelines calculation, either to the Probation Office, *see* PSR Addendum, or to the district court, either in his sentencing memorandum, A. 68, or at the sentencing hearing.  A. 77.

At sentencing, the district court noted that it had "received and reviewed in this case the presentence investigation report prepared by the probation department, the government's sentencing memorandum and the defense's sentencing memorandum as well as the plea agreement."  A. 76.  Then, after hearing from government counsel and Staples and discussing the harm that Staples caused to his victims, the district court stated:

> So, without going into a lot of details, the Court is going to indicate that along with the documents that have already memorialized on the record by articulating what I read, I also considered all of the factors that are set forth in 18 U.S. Code, Section 3553(a) and have examined the guideline manual in connection with this matter and the Court finds your total offense level is a 43; your criminal history category is a one; and your guideline imprisonment range is life.  However, the statutorily-authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range

57

is 1,080 months, pursuant to Section 5Gl.2B of the sentencing guidelines.

A. 86-87.

After imposing sentence, the district court stated:

Based upon the nature and circumstances of your offense and history and characteristics, the Court finds a sentence of 1,080 months, followed by a lifetime term of supervised release, is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for law, provides just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from further crimes by you. Specifically, the Court notes that you sexually abused multiple minor males, including two of your own family members, as well as another victim who was in the custody and care of you, produced pornographic images of such conduct and posted images of child pornography and erotica of the victims on the Internet. There are no mitigating factors in this case which would warrant a sentence outside of the guideline range.

A. 87-88.

58

Staples did not object to the procedure by which the district court reached its sentencing decision, to the court's explanation for its sentence, or to the sentence itself. A. 92-93.

## B. Governing Law

When sentencing an offender, a district court must calculate the guidelines range, treat the guidelines as advisory, and consider the factors set out in 18 U.S.C. § 3553(a). *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). Title 18, Section 3553(c) requires a sentencing court to "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). As this Court has found, Section 3553(c) is satisfied "when a court's statements meet the goals of (1) informing the defendant of the reasons for his sentence, (2) permitting meaningful appellate review, (3) enabling the public to learn why the defendant received a particular sentence, and (4) guiding probation officers and prison officials in developing a program to meet the defendant's needs." *United States v. Cassesse*, 685 F.3d 186, 192-93 (2d Cir. 2012) (internal quotation marks removed).

"Procedural error [at sentencing] occurs when the district court (1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not

59

adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009).

A district court does not commit error if it refrains from calculating an offender's precise offense level when taking a "shortcut" will have "no effect on [the offender's] ultimate Guidelines range." *United States v. Corsey*, 723 F.3d 366, 375 (2d Cir. 2013). Thus, this Court has acknowledged that "we have never held that a court commits procedural error where it bypasses a minefield of tricky determinations and still arrives at the correct Guidelines recommended sentencing range. To do so would be the equivalent of docking a test grade even though a student found a quicker route to the right answer." *Id*.

This Court has adopted a similarly practical approach to a lower court's consideration of the other sentencing factors in § 3553(a). Rather than impose rigid articulation requirements, it "presume[s] 'that a sentencing judge has faithfully discharged her duty to consider the statutory factors.'" *United States v. Verkhoglyad*, 516 F.3d 122, 129 (2d Cir. 2008) (quoting *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006)). Thus, the Court does not require "robotic incantations that the district court has considered each of the § 3553(a) factors." *Cavera*, 550 F.3d at 193 (internal quotation marks omitted). Moreover, this Court has "steadfastly refused to

60

require judges to explain or enumerate how such consideration was conducted." *United States v. Pereira*, 465 F.3d 515, 523 (2d Cir. 2006) (citation omitted). "[A] sentencing judge's decision not to discuss explicitly the sentencing factors or not to review them in the exact language of the statute does not, without more, overcome the presumption that she took them all properly into account." *Id.* (citations omitted).

## C. Standard of Review

When an offender preserves an alleged procedural error at sentencing for appellate review by making a timely and specific objection, this Court applies a deferential abuse of discretion standard. *See Cavera*, 550 F.3d at 189. Because Staples did not object to the district court's adoption of the PSR-recommended guidelines range, to its consideration of the 3553(a) factors, or to the alleged inadequacy of its explanation under 3553(c), his procedural claims must be reviewed for plain error. *United States v. Wagner-Dano*, 679 F.3d 83, 88 (2d Cir. 2012); *United States v. Villafuerte*, 502 F.3d 204, 211 (2d Cir. 2007). That standard is described at pages 19-20, *supra*.

## D. Discussion

The district court committed no error, plain or otherwise, when it sentenced Staples. The court explained that it had reviewed the guidelines manual

61

and had calculated Staples' offense level to be 43 (the offense level that the PSR and both parties had endorsed ), his criminal history category to be I, and his range to be a life sentence. The district court then cited to the guidelines provision that advised consecutive sentences to achieve as close as possible a lifetime term of imprisonment here. Staples did not object below and raises no meaningful challenge to that guidelines calculation here.[9]   Under those circumstances, it was legally sufficient, and certainly not plainly erroneous, for the district court to simply articulate the *result* of its guidelines calculation – an offense level of 43 – rather than explain every step of the process. *See Corsey*, 723 F.3d at 375 ("Rather than resolve technical arguments about each enhancement, the District Court chose a more pragmatic approach—it calculated the Guidelines in sufficient detail to know that the resulting sentencing range would inevitably equal 20 years regardless whether certain additional enhancements applied."). This is particularly true where, with an agreed-upon pre-acceptance-of-responsibility offense level that would have been 50 if the guidelines provided for a level that high, there was a sizeable margin for error before Staples would have suffered any prejudice.

Further, the district court here noted its consideration of "all of the factors that are set forth in 18 U.S. Code, Section 3553(a)" and provided a fact-

---

[9] *See* pages 40-47, *supra*.

62

based explanation for its imposition of a within-guidelines sentence after such consideration, referring to Staples' sexual abuse of multiple minor victims, including family members and a minor in his care, his production and internet posting of pornographic images of those victims, and the absence of mitigation evidence. Nothing more was required.

**Point IV:    The Within-Guidelines Term of Imprisonment Was Substantively Reasonable.**

### A. Governing Law

If she complies with the above-described procedural requirements, "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *Cavera*, 550 F.3d at 188. "Substantive reasonableness 'focuses on a district court's explanation of its sentence in light of the factors contained in 18 U.S.C. § 3553(a).'" *United States v. Matta*, 777 F.3d 116, 124 (2d Cir. 2015) (quoting *United States v. Gonzalez*, 529 F.3d 94, 98 (2d Cir. 2008)).

### B. Standard of Review

This Court's "review of a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir.

63

2012). Under such review, district court sentences will be vacated on appeal only when they are "so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing them to stand would 'damage the administration of justice.'" *Id.* (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

In determining whether a sentence is substantively unreasonable, an appellate court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190. Ultimately, this Court will set aside a sentence "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *Id.* at 189 (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). While this Court does not presume that a within-Guidelines sentence is substantively reasonable, in "the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

This Court has not decided "whether plain error review applies to an unpreserved challenge to the substantive reasonableness of a sentence." *United*

64

*States v. Thavaraja*, 740 F.3d 253, 258 n.4 (2d Cir. 2014).

## C. Discussion

Staples' claim that his term of imprisonment is substantively unreasonable focuses on both the absolute length of the sentence, characterizing it as a "life sentence" and noting that Staples' projected release date is March 20, 2092, and its relation to other "child pornography" sentences. Staples' Opening Brief at 34-35. His challenge ignores that his within-guidelines sentence resulted from his commission of and conviction for horrific crimes – the oral and anal rape and molestation of multiple underage males, including relatives, and his production and distribution of pornographic images of that sexual exploitation. Aware of the nature of Staples' offenses, and supplied with statements from additional child victims whose images Staples had on his computer, the district court could reasonably conclude that the severity of Staples' crimes, the harm that he caused and would cause again if he were to reoffend if released, and the need to deter others with similar proclivities justified a within-guidelines sentence that effectively imprisons Staples for life. As the district judge explained to Staples:

> The problem with this case is that I have had a lot of experience with people who have been victimized by conduct, maybe not quite as heinous as yours but they're close and it really

65

ruins those people involved, those young men.
Their lives are full of uncertainty and I believe
probably will be full of pain and no one can
relieve them of that pain. They're going to
have to go through that and I think that's really
at the bottom of the terribleness of what your
conduct caused.

A. 85-86.

In other recent cases involving production of child
pornography with similar and less egregious offender
conduct, this Court has upheld sentences that
effectively require life imprisonment. *See, e.g.,
United States v. Brown*, ___ F. App'x ___, 2015 WL
3498746, at *2 (2d Cir. June 4, 2015) (rejecting claim
that 720-month sentence for offender who persuaded
girlfriend to photograph genital area of minors
accessible to her was substantively unreasonable);
*United States v. Brooks*, 605 F. App'x 50, 51-52 (2d
Cir. 2015) (affirming 50-year sentence for offender
who "possessed thousands of videos and images
depicting violent child pornography, made those
videos and images available for others to download
over the internet throughout a seven-year period,
produced grotesque child pornography in a classroom
of the public elementary school where he worked as a
teacher's aide, and repeatedly sexually assaulted a
ten-year-old boy who attended that elementary
school"); *United States v. Hamilton*, 548 F. App'x
728, 730 (2d Cir. 2013) (affirming 1,800-month term

66

of imprisonment for "producing graphic child pornography by [the defendant] filming himself sexually abusing children as young as four years old").

## CONCLUSION

The government respectfully requests that this Court enforce the appeal waiver and dismiss Staples' appeal without consideration of the merits of his claims. Alternatively, it should affirm the conviction and sentence in all respects.

Dated: Syracuse, New York
September 8, 2015

Respectfully submitted,

Richard S. Hartunian
*United States Attorney for the*
*Northern District of New York*
*Attorney for Appellee*

/s/ *Steven D. Clymer*
By: STEVEN D. CLYMER
*Assistant United States Attorney*

KATHERINE KOPITA
*Assistant United States Attorney*
*of Counsel*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellant Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B). As measured by the word-processing system used to prepare this brief, there are approximately 13,664 words in the brief.

RICHARD S. HARTUNIAN
*United States Attorney for the*
 *Northern District of New York*

/s/ *Steven D. Clymer*
By: STEVEN D. CLYMER
*Assistant United States Attorney*

## CERIFICATE OF SERVICE BY
## CM/ECF

UNITED STATES OF AMERICA
v.
STAPLES

Docket No. 14-4035

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on September 8, 2015, she served a copy of the appellee's Brief on the United States Court of Appeals for the Second Circuit and counsel for appellant, John S. Wallenstein, Esq., by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.


/s/ *Deanna Lieberman*
Deanna Lieberman